**W. B. and Dorothy LENAMON,**
Petitioners,

v.

**COMMISSIONER OF INTERNAL REVENUE,** Respondent.

No. 18770.

United States Court of Appeals
Fifth Circuit.

Dec. 13, 1961.

James F. Goodman, Waco, Tex., for petitioners.

Hart H. Spiegel, Chief Counsel, Rollin H. Transue, Sp. Atty., I. R. S., Washington, D. C., Abbott M. Sellers, Acting Asst. Atty. Gen., Lee A. Jackson, Atty. Dept. of Justice, Washington, D. C., Louis F. Oberdorfer, Asst. Atty. Gen., I. Henry Kutz, Harold M. Seidel, Burt J. Abrams, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before TUTTLE, Chief Judge, and HUTCHESON and RIVES, Circuit Judges.

TUTTLE, Chief Judge.

This appeal from the Tax Court tests the correctness of its decision that the

taxpayer failed to carry the burden of proof with respect to his claimed deductions in the form of additions to reserves for bad debts under Section 23(k)(1) of the 1939 Internal Revenue Code, 26 U.S. C.A. § 23(k)(1).

The Statute involved [1] permits the deductions of debts which become worthless within the taxable year or as an alternative the taxpayer may, in the discretion of the Commissioner, deduct a reasonable addition to a bad debt reserve. This taxpayer, engaged in operating a lumber yard and in the building of small homes for sale, set up reserves as of the end of the taxable years in question, September 30, 1953 and September 30, 1954 in the following amounts:

|  | 1953 | Sept. 30, 1954 |
|---|---|---|
| Accounts receivable | $ 9,900.00 | $ 652.82 |
| Allowance for loss | 4,500.00 | 130.56 |
| Houses in Progress | 48,577.49 | 38,952.60 |
| Allowance for loss on repossessed houses | 750.00 | None |
| Equity in houses taken in trade | 7,900.00 | 3,016.71 |
| Allowance for loss | 3,450.00 | None |
| Mechanics liens receivable | 25,833.10 | 10,883.21 |
| Allowance for loss | 2,585.75 | 2,176.64 |
| Second lien notes receivable | 11,090.69 | 9,578.15 |
| Allowance for loss | 6,654.41 | 9,578.14 |
| Short term notes receivable |  | 5,989.57 |
| Allowance for loss |  | 1,197.91 |
| Mortgage notes receivable |  | 97,010.67 |
|  |  | 9,701.07 |
| Total Reserves or allowances | $17,940.16 | $17,037.44 |

His income tax return for 1953, however, claimed deductions on account of these items of only $12,345.76. The Commissioner determined that the taxpayer's deductions for additions to reserves were excessive in the amount of $4,540.57 for 1953 and in the amount of $4,364.19 for 1954.

■ Although it may fairly be stated, as contended by the Government, that the Tax Court proceedings were based on the contention of the taxpayer that the

1. Sec. 23 " * * * (k) Bad debts.

"(1) [as amended by Sec. 124(a), Revenue Act of 1942, c. 619, 56 Stat. 798; and Section 113(a), Revenue Act of 1943, c. 63, 58 Stat. 21] General rule. Debts which become worthless within the taxable years; or (in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. * * * "

Commissioner erred in disallowing the additions to reserves,[2] the taxpayer now undertakes to say that the items for which deductions were disallowed were not deductions at all under Section 23 (k)(1), but were, rather, estimates of the percentage of face value of property, received in exchange under Section 111(a) and (b) of the 1939 Code, 26 U.S.C.A. § 111(a, b)[3] that represented the difference between the face value of notes, mortgages, etc. received and their true value. In other words, what the taxpayer originally claimed the right to deduct as a bad debt reserve from conceded income for the two tax years he now claims the right to use for the purpose of reducing his reportable income for the years in question.

While, as we have said, reading of the record makes it quite clear that the parties litigated the case before the Tax Court on the theory that the taxpayer was entitled to take deductions by adding the disallowed amounts to his reserve for bad debts, we have, nevertheless, read the record for the purpose of determining whether the taxpayer would have been entitled to a favorable decision on the theory that he now advances.

Upon searching the record to enable us to determine whether the petitioner made out his case that the property received by him in exchange was worth less than the face amount of the notes, mortgages, etc., we run headlong into the difficulty inherent in this sort of second guessing because of the inherent differences between the nature of proof necessary to entitle a taxpayer to set up bad debt reserves and that necessary to prove

that where he receives property in lieu of cash the property is worth less than the face amount of the obligations. As an illustration, it is clear that the amount that is reasonable to be added to bad debt reserve need not be computed on the basis of a particular year's income. It may be based, rather, on experience in collectibility of the same type of debts and other circumstances such as current business conditions, the size of the previously allowed reserve, and the like. See Black Motor Co., 41 B.T.A. 300; Maverick Clarke Litho Co. v. Commissioner, 5 Cir., 180 F.2d 587. In determining the value of property received in exchange as a part of taxable income, the item of fair market value must of course relate to the particular items of property received and reported as income in the identical tax year.

The nature of proof which appellant here asserts entitled him to a decision at the hands of the Tax Court was general testimony touching on the marketability and value of mortgage notes, second lien notes and mechanic's lien notes as classes of property. It is apparent that the taxpayer then applied the percentage of face value which these witnesses gave as their estimate to his entire holdings in the several categories and he then deducted the balance as representing an excess of value. This computation and deduction were made for each of the years in question without reference to whether the property subjected to such valuation was or was not received by him during the tax year in question and whether or not it was included in income at all during the particular tax year. As an illustration, the taxpayer showed that he

---

2. The Tax Court opinion dealt with the matter almost entirely on the theory that there was a burden on the petitioner to prove that the disallowance of the deductions in the years involved was an abuse of the Commissioner's discretion, citing Maverick Clarke Litho Co., v. C. I. R., 5 Cir., 180 F.2d 587.

3. Sec. 111. "Determination of amount of, and recognition of, gain or loss.
"(a) *Computation of gain or loss.* The gain from the sale or other disposition

of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 113(b) for determining gain, and the loss shall be the excess of the adjusted basis provided in such section for determining loss over the amount realized.
"(b) *Amount realized.* The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received."

owned $65,449.76 of mortgage notes receivable at December 31, 1953. He claimed the right to deduct 10% or $6,544.98 to reduce the amount of his income for the year ending September 30, 1953, but so far as the record shows the entire $65,449.76 in mortgage notes may have been received by him in a prior year. The same comment is to be made with respect to each of the other items as to which he claimed the right to take percentage of the face amount as representing the true value.

Other equally valid criticisms of the appellant's contention made by the appellee are: first, that Section 111(a) and (b) are not applicable as to accounts receivables for merchandise sold in the usual course of business, Spring City Foundry Co. v. Commissioner, 292 U.S. 182, 54 S.Ct. 644, 78 L.Ed. 1200, or as to loans made by the taxpayer that do not represent sales for property other than cash or to mechanic's liens; and, second, that the taxpayer claimed the right to deduct 10% of the face amount of the mortgage notes receivable in a year in which he reported only a small part received as an installment payment as income under his election to report his long time sales under the installment method provided in Section 44 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 44. Thus, as an illustration, he reported receipts in 1953 of $6,525.37 as installment payments on notes which may have equalled three or four times that amount. Without including the larger amount in his gross receipts for income tax purposes he claimed the right to deduct 10% of that amount to reduce his taxable income for the year.

We have carefully reviewed the record and conclude that such proof as was offered to show the market value of certain classes of assets owned by the taxpayer did not approach that which was necessary to prove that he had overstated his income to the extent of the deductions originally claimed as bad debt reserves or in any other amount.

The judgment of the Tax Court is Affirmed.