COMMONWEALTH OIL REFINING
COMPANY, INC.,
Plaintiff-Appellant,

v.

EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Defendant-Appel-
lee.

No. 82–1581.

United States Court of Appeals,
Fifth Circuit.

Dec. 12, 1983.

Milgrim, Thomajan, Jacobs & Lee, Samu-
el D. Rosen, New York City, for plaintiff-
appellant.

Marcia B. Ruskin, Susan B. Reilly, E.E.
O.C., Washington, D.C., for defendant-ap-
pellee.

Before GEE, GARZA and TATE, Circuit
Judges.

GEE, Circuit Judge:

Following entry of a consent decree be-
tween the Equal Employment Opportunity
Commission (EEOC) and Commonwealth
Oil Refining Company, Inc. (Common-
wealth) (settling EEOC charges of hiring
and promotion discrimination against wom-
en and Puerto Ricans at Commonwealth's
Peneulas, Puerto Rico, facilities), Common-
wealth filed suit in federal district court for
attorney's fees under § 706(k) of Title VII,
42 U.S.C. § 2000e–5(k) (1976), asserting
that it was the prevailing party and that
the EEOC's suit was brought in bad faith.
The district court determined that there
was no genuine issue of material fact and
granted the EEOC's motion for summary
judgment, Fed.R.Civ.P. 56(c). We find that
the district court erred in granting summa-
ry judgment without holding a full hearing
to resolve the issues presented by Common-
wealth's claim: whether the defendant
Commonwealth "prevailed" and if so,
whether the EEOC acted in bad faith
and/or pressed frivolous claims. Therefore

we remand for an evidentiary hearing and findings in accordance with this opinion.

## I. *Background*

In February 1975, an EEOC charge was filed against Commonwealth alleging that the company was violating Title VII, 42 U.S.C. § 2000e *et seq.,* by discriminating against women and Puerto Ricans with respect to hiring, promotion and compensation at its Peneulas, Puerto Rico, petrochemical complex. An investigation followed and in February 1977 the EEOC issued a decision finding reasonable cause to believe specific portions of the charge true. Ensuing conciliation efforts, though complicated by Commonwealth's intervening insolvency and Chapter XI reorganization proceeding,[1] ultimately led to a conciliation agreement. A consent decree was entered by the parties and approved by the bankruptcy court in January 1981.

The consent decree set out procedures whereby Commonwealth was to publicize equal employment policies and programs, and provided for monitoring its compliance. Commonwealth agreed to increase the representation of Puerto Ricans and women in entry level positions in six different operational departments, and to contact local Puerto Rican colleges and referral agencies in its future recruitment efforts. The decree also instituted procedures to identify, and even counsel and train, current female employees for promotion into certain "target area jobs." Commonwealth agreed to budget $50,000 a year to fund these efforts. In addition, the consent decree provided relief for all identifiable women and Puerto Ricans against whom Commonwealth had discriminated in hiring or promotion between February 1973 and the date of the decree. The decree provided that a Special Master, empowered to award back wages and preferential seniority and order preferential hiring or promotion, would hear all cases that the parties could not resolve through informal conciliation efforts. A fund of one million dollars was established to satisfy any potential liability on these past claims.

Commonwealth's reorganization efforts proved successful, and in June 1981 a plan of arrangement was approved by the bankruptcy court. Subsequently, the company brought this action in federal district court seeking attorney's fees against the EEOC pursuant to § 706(k) of Title VII alleging that (a) it had prevailed against the EEOC in the proceedings initiated by the 1975 charge, and (b) that the EEOC had proceeded "in bad faith and with no reasonable belief in the merits of the factual and legal positions it espoused."

Commonwealth's Amended Complaint asserted three separate "claims for relief" on which it purportedly prevailed. The first advanced two theories to conclude that Commonwealth had been the prevailing party under the consent decree: (a) that the decree contained "no remedy or relief for many of the more substantial discriminatory practices [that had been originally] alleged in the [EEOC's original charge and subsequent determination]"; and (b) that the decree ultimately entered by the parties afforded less relief than had been offered by Commonwealth to the EEOC in earlier conciliation negotiations. The second asserted that Commonwealth was a prevailing party in its successful effort (before entry of the consent decree) to defeat the EEOC's attempt to evade Chapter XI's automatic stay provision, Bkrptcy. R. 11–44(a), which barred the EEOC from commencing a Title VII suit in district court. The third asserted that Commonwealth had been a prevailing party because 77 of the 109 names initially identified as likely victims of past discrimination under the provisions of the consent decree were ultimately withdrawn.

Commonwealth sought $525,000 in fees plus the costs and fees incurred in bringing the fee action itself. The EEOC filed a motion to dismiss, or in the alternative for summary judgment, and Commonwealth filed a cross motion for summary judgment. The district court concluded that no genuine issues of material fact existed, denied

---

1. 11 U.S.C. § 1101 *et seq.*

Commonwealth's motion, and granted that of the EEOC. This appeal followed.

■ On appeal, Commonwealth asserts that it prevailed against the EEOC on claims advanced by the EEOC which were either frivolous or undertaken in bad faith and is therefore entitled to an award of attorney's fees pursuant to 706(k) of Title VII.

## II. *The "Prevailing Party" Test Applied to Defendants*

Section 706(k) of Title VII provides:

In any action or proceeding under this subchapter the court, in its discretion, may allow *the prevailing party,* other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs as a private person.

(Emphasis added). As is well known, Supreme Court decisions, most notably *Christiansburg Garment Co. v. Equal Employment Opportunity Commission,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), have grafted onto the "permissive and discretionary language of the statute," *Christiansburg,* 434 U.S. at 418, 98 S.Ct. at 699, further requirements for the recovery of attorney's fees which differ radically depending on whether the party deemed "prevailing" is plaintiff or defendant. Prevailing civil rights plaintiffs are to recover fees "in all but special circumstances," 434 U.S. at 417, 98 S.Ct. at 698, citing *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). Prevailing defendants may recover only upon a finding that the plaintiff's claim is frivolous, unreasonable, groundless, made in bad faith, or

persisted in after its character as one of these has become clear. 434 U.S. at 421, 98 S.Ct. at 700.

■ Both decisional authority and the unequivocal language of § 706(k) itself, however, require a plaintiff, equally with a defendant, to demonstrate that he is the "prevailing party" as a threshold for recovery of attorney's fees. Our Court's test of status as "prevailing party" in civil rights cases, laid down early and reaffirmed in case after case, declares: "The proper focus is whether the plaintiff has been successful on *the central issue* . . . as exhibited by the fact that he has acquired *the primary relief sought." Iranian Students Ass'n v. Edwards,* 604 F.2d 352, 353 (5th Cir.1979) (Goldberg, J.) (emphasis added). *See also Taylor v. Sterrett,* 640 F.2d 663, 669 (5th Cir.1981) (identical language, citing *Edwards*); *Coen v. Harrison County School Bd.,* 638 F.2d 24, 26 (5th Cir.1981) (identical language, citing *Edwards* and other cases).[2] We have applied this test of "prevailing party" status equally to both plaintiffs and defendants. *See EEOC v. Kimbrough Investment Co.,* 703 F.2d 98, 103 (5th Cir.1983) (awarding costs to employer as prevailing party but denying attorney's fees under *Christiansburg; United States v. Allegheny-Ludlum Industries,* 558 F.2d 742, 743 (5th Cir.1977) (withdrawn in part, 568 F.2d 1073, 1074 (5th Cir.1978)).

While it may not easily lend itself to further articulation, this single test provides a commonsense, practical yardstick of success. In many if not most lawsuits, whether tried or settled,[3] it is possible to compare the allegations made with the results obtained and pick out a winner: a plaintiff who carried the day on his major

**2.** As the Supreme Court indicated in passing in a recent decision reversing an award of attorney's fees because the district court did not properly consider the relationship between the extent of plaintiff's success and the amount of the fee award, the test applied in this Circuit differs from the "generous formulation" applied in the First, Seventh and Ninth Circuits under which "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the

parties sought in bringing suit." *See Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 1939 and n. 8, 76 L.Ed.2d 40 (1983).

**3.** Our cases hold that attorney's fees may be awarded absent a grant of formal judicial relief as long as the moving party has achieved the primary relief he sought, *Iranian Students Ass'n. v. Sawyer,* 639 F.2d 1160, 1163 (5th Cir.1981); *Robinson v. Kimbrough,* 652 F.2d 458, 466 (5th Cir.1981).

claim, a defendant who defeated the major thrust of the suit. In other cases it may be that neither party could fairly be said to have carried the day, and in such event there should be no fee award to either.

Thus, the district court below was required by Section 706(k) and case precedent to weigh the claims for relief advanced by the EEOC against the results obtained by it to determine whether Commonwealth was the prevailing party as the initial step in determining whether Commonwealth was entitled to a fee award. As the next step, it was required to determine whether the claims advanced by the EEOC were frivolous, vexatious or brought to harass Commonwealth.[4] However, the order issued by the trial court granting summary judgment for the EEOC sets forth no grounds for its decision, nor were any opinion, findings, or conclusions of law separately filed. This leaves both this Court and the parties in limbo. Indeed, on appeal Commonwealth argues that the trial court's decision was based on the notion that the res judicata effects of the consent decree barred Commonwealth's claim. Both the undeveloped state of the record and our restricted role as an appellate court prevent us from divining the several grounds on which the district court may have based its ruling.

Because of the lack of clarity in the district court's order, and because of the lack of express findings on whether Commonwealth prevailed or whether it is entitled to attorney's fees under *Christiansburg,* we remand for an evidentiary hearing on these issues. *See Neidhardt v. D.H. Holmes Co. Ltd.,* 701 F.2d 553 (5th Cir.1983) (remanding for determination of defendant's entitlement to attorney's fees under § 706(k) where basis for denial unclear). The judgment of the district court is

REVERSED and the cause REMANDED.

TATE, Circuit Judge, dissenting:

I respectfully dissent.

The majority reverses and remands for further evidence as to whether the defendant employer Commonwealth—which had previously entered into a consent decree ending its past employment practices discriminating against Puerto Ricans and females and by which Commonwealth had allotted one million dollars to satisfy past discrimination-based claims for back pay and denial of seniority[1]—was indeed the "prevailing party" so that *it* is entitled to attorney's fees under § 706(k) of Title VII, 42 U.S.C. § 2000e–5(k). Ignoring controlling precedent of the Supreme Court, as well as flouting common sense, the majority accepts Commonwealth's argument, asserted by this post-decree suit, that it might be regarded as "prevailing"—despite the plaintiff Commission's seeming victory achieved by the consent decree—because the Commission did not prevail on *all* the issues in the case, and because, in Commonwealth's characterization, the latter issues (instead of the ones on which the Commission prevailed) were the central issues and the major thrust of the suit.[2]

---

4. As the Supreme Court indicated in *Eckerhart,* 103 S.Ct. at 1940, the district court should conduct a separate factual inquiry with regard to each "unrelated claim" advanced by the plaintiff. Indeed, "if [any unrelated] claim is frivolous, the defendant may recover attorney's fees incurred in responding to it. . . ." *Id.* n. 10.

1. The Equal Employment Opportunity Commission had filed a complaint against the defendant Commonwealth alleging that Commonwealth's employment practices discriminated on the basis of sex and national origin and that this corporation was liable in damages for approximately $2.8 million. In January 1981, a consent decree was entered into by the parties and approved by the court, which, inter alia,

provided for affirmative steps and hiring goals to end discrimination against Puerto Ricans and females and by which Commonwealth allotted one million dollars to satisfy past claims for back wages and denial of seniority arising from past discrimination.

2. However relevant these arguments might be to a contention by Commonwealth that the Commission only partially prevailed or (*dubitante*) even was not the "prevailing party" for purposes of the award of attorney's fees, they are completely irrelevant, as the dissent will elaborate, to the issue before the court— whether Commonwealth itself was the "prevailing party" in the present litigation, which was ended by a consent decree by which, inter

For reasons to be elaborated, the district court correctly rejected Commonwealth's arguments and found that, as a matter of law, under the facts shown Commonwealth could not be a Title VII prevailing party entitled to attorney's fees.

## I.

The Supreme Court has most recently summarized the principles that apply to the award of attorney's fees to the "prevailing party" in civil rights and Title VII litigation:

"[A] prevailing plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Hensley v. Eckerhart,* —— U.S. ——, ——, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983). The "'plaintiffs may be considered "prevailing parties" for attorney's fee purposes if they succeed on *any* significant issue in litigation which achieves *some* of the benefit the parties sought in bringing suit.'" —— U.S. at ——, 103 S.Ct. at 1939 (emphasis added). "A prevailing defendant may recover an attorney's fee only where the *suit* was vexatious, frivolous, or brought to harass or embarrass the defendant." —— U.S. at ——, 103 S.Ct. at 1937 (emphasis added). With regard to the present litigation, where the *plaintiff* did not recover on the merits on *all* the claims advanced by its suit, the Court stated:

Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of

fees that is reasonable in relation to the results obtain.

—— U.S. at ——, 103 S.Ct. at 1943.

Application of these principles to the present undisputed facts seems to me to be plain. With regard to the Title VII litigation concluded by the consent decree, the plaintiff Commission—whether it be regarded as having won "substantial relief" (as to me is apparent it did) or instead as achieving "only limited success" (as Commonwealth claims) is the prevailing party and entitled to attorney's fees (which thus far it has not sought). The defendant Commonwealth, having lost on the merits on some of the "significant issues" advanced by the Commission, is thus not entitled to recover attorney's fees: the Commission's "suit" against Commonwealth, which did obtain relief ending employment discrimination, was, if only because of the Commission's success, not "vexatious, frivolous, or brought to harass or embarrass" so as to entitle Commonwealth to relief, even if Commonwealth *had* been the prevailing party in the litigation.

For these simple and easily administered tests, the majority substitutes a post-judgment procedure whereby a court may award a defendant employer attorney's fees, even though the Title VII claimant won substantial relief on the basis of the employer's past discrimination. Deduced from a few scattered decisions of this circuit on quite different issues, the majority finds that, after the conclusion of the litigation affording employment-discrimination relief against the employer, the court may determine that the employer is the prevailing party (and thus entitled to attorney's fees), enunciating for the first time a requirement that, after merit-litigation concludes, the court must weigh the claims advanced by the Commission against the successful results obtained, and then determine whether the rejected claims were frivolous, vexatious, or brought to harass the employer. Pretermitting that in defiance

---

alia, it allotted one million dollars to pay back-wage and other claims for past employment

discrimination.

of Supreme Court and circuit jurisprudence (and of common sense) this would permit characterization as a "prevailing party" of a defendant employer against whom substantial relief was ordered, the procedural scheme and issues envisaged fly in the face of the Supreme Court's recent injunction in *Hensley v. Eckerhart, supra,* that "[a] request for attorney's fees should not result in a second major litigation." —— U.S. at ——, 103 S.Ct. at 1941.

## II.

The majority reaches this curious conclusion on the basis of inapposite decisions by this circuit.

It relies on the test stated in *Iranian Students Association v. Edwards,* 604 F.2d 352 (5th Cir.1979)—where the civil rights *plaintiffs* prevailed—, in which we stated that "[t]he proper focus is whether the *plaintiff* has been successful on the central issue" or "has acquired the primary relief sought." 604 F.2d at 503 (emphasis added). The majority overlooks that the issue in this inapposite decision was only whether a plaintiff, which had obtained relief after a temporary restraining order, could be regarded as a prevailing party in the absence of a showing of "probable success on the merits" (had the case been fully tried). *Id.* The court's actual holding was that "a plaintiff can be a 'prevailing party' even though the relief he has obtained is only preliminary [citation omitted] or is the result of a consent decree." *Id.* I am unable to read from the language or holding of this decision any implication that a civil rights *defendant, against* whom relief has been ordered, can somehow become the prevailing party because the defendant might have lost more than he actually did.

The other decisions relied upon by the majority are similarly inapposite to the present issue. In *Taylor v. Sterrett,* 640 F.2d 663, 669–70 (5th Cir.1981), where in reiterating the test, a civil rights plaintiff (who had been awarded attorney's fees for success on the merits) was denied attorney's fees for supplementary proceedings in which he did not prevail on the merits on the central (or any) issue of those supplementary proceedings. 640 F.2d at 670. Likewise in *Coen v. Harrison County School Board,* 638 F.2d 24 (5th Cir.1981), where the civil rights plaintiffs had not prevailed on a merit-trial but arguably were a "prevailing party" because the relief sought had been voluntarily granted after suit was filed, the court cited the central issue test, but nevertheless affirmed the denial of all but nominal attorney's fees because the suit was not "a major factor in bringing [success] about. A civil rights plaintiff may not collect attorney's fees for demanding that a state officer do what he would have done in any case." 638 F.2d at 26.

The final decision relied upon by the present majority seems to be contrary to the majority's position in the present case. In *Equal Employment Opportunity Commission v. Kimbrough Investment Company,* 703 F.2d 98, 103 (5th Cir.1983), an employer had prevailed on the merits (unlike the present defendant employer), but was nevertheless denied attorney's fees as a "prevailing party" under the strict test applicable to Title VII defendants—that the suit be "unreasonable, frivolous, meritless, or vexatious," 703 F.2d at 103—even though the employer won on the merits and previous thereto, inter alia, the government had rejected the employer's offer of settlement through adoption of an affirmative action plan, and even though the Commission had used statistical evidence that substantially lacked probative value. The court pointed out that the government's "investigation showed a potential for unlawful discrimination" and that some of the evidence was "probative" of "[discriminatory] hiring practices," and it concluded that therefore "the case was not vexatious." 703 F.2d at 103.

Thus, in *Kimbrough,* a Title VII defendant who *prevailed* after trial on the merits was held not entitled to "prevailing party" attorney's fees under the strict test applicable to such defendants, because the government's action could not be held to be vexatious where the government had relied upon probative (but eventually rejected) evidence

of discriminatory hiring practices. Here, the Title VII defendant not only did *not* prevail on the merits, but by the consent decree was ordered to end discriminatory practices and to allot one million dollars for backpay potentially owed because of them. *Kimbrough,* if applicable, is contrary in rationale and result to the majority's holding.[3]

## Conclusion

For the reasons perhaps too lengthily stated, the majority in my opinion ignores the controlling jurisprudence in holding that the Title VII defendant employer, Commonwealth, could conceivably be the prevailing party in this litigation, which was concluded by a consent decree remedying Commonwealth's past discriminatory practices and requiring it to allot one million dollars to pay claims of those aggrieved by its past employment discrimination.

Under these views, it is irrelevant to discuss the issues upon which Commonwealth claims to have prevailed. However, because the majority so lightly glides by them in the context of the entire litigation, I am attaching an overview of the litigation and these issues as an appendix to this opinion, for the benefit of subsequent en banc or Supreme Court review. Were I to reach the merits of Commonwealth's contentions in this regard, I would be inclined to view them as insubstantial in the light of the jurisprudence insofar as attempting to depict Commonwealth as a prevailing party.

I respectfully dissent.

### Appendix

Neither the majority nor the dissent felt to be relevant the actual content and significance of the issues upon which Commonwealth claims to have prevailed. In my view, in the context of the litigation, the issues upon which Commonwealth claims to have prevailed are insubstantial. For the benefit of those who might be interested in this aspect of the issues before us, I am setting forth: I. The Context Facts; and II. The Issues Upon Which Commonwealth Claims to Have Prevailed.

3. The majority also cites *United States v. Allegheny-Ludlum Industries,* 558 F.2d 742 (5th Cir. 1977), which (1) remanded the claim of an employer (which had prevailed on an appeal) to the district court to determine whether it had prevailed on "a 'significant and discrete' proceeding" (relating to dismissal of an intervention), 558 F.2d at 743, and (2) held that attor-

## I. *The Context Facts*

In February 1975, an Equal Employment Opportunity Commission charge was filed against the Commonwealth Oil Refining Company alleging that the company was discriminating against women and Puerto Ricans with respect to hiring, promotion and compensation at its Peneulas, Puerto Rico petrochemical complex. An investigation followed, and in February 1977, the Commission issued a decision. finding reasonable cause to believe the charge true. Ensuing conciliation efforts, though complicated by Commonwealth's intervening insolvency and Chapter XI reorganization proceeding, ultimately led to a conciliation agreement. A consent decree was entered by the parties and approved by the bankruptcy court in January 1981.

The consent decree provided procedures whereby Commonwealth was to publicize equal employment policies and programs, and for monitoring its compliance therewith. Commonwealth agreed to increase the representation of Puerto Ricans and women in entry level positions in six different operational departments, and to contact local Puerto Rican colleges and referral agencies in its future recruitment efforts. The decree also instituted procedures to identify counsel, and train current female employees for promotion into certain "target area jobs". Commonwealth agreed to budget $50,000 a year to fund these efforts. In addition, the consent decree provided relief for all women and Puerto Ricans that Commonwealth had discriminated against in the past (in hiring or promotion between February 1973 and the date of the decree) that the Commission was able to identify. The decree provided that a Special Master, empowered to award back wages, preferential seniority and order preferential hiring or promotion, would hear all cases that the parties could not resolve through informal conciliation efforts. One million dollars was allotted to satisfy these past claims.

Commonwealth's reorganization efforts proved successful, and in June 1981 a plan of arrangement was approved by the bankruptcy court. Subsequently, the company brought an action in federal district court seeking an allowance of attorney's fees against the Commission pursuant to § 706(k) of Title VII, 42 U.S.C. § 2000e–5(k), alleging that (a) it had prevailed against the Commission in the course of the proceedings initiated by the 1975 charge, and (b) that the Commission had proceeded "in bad faith and with no reasonable belief in the merits of the factual and legal positions it espoused".

Commonwealth sought $525,000 in fees plus the costs and fees incurred in bringing the fee action itself. The Commission filed a motion to dismiss and/or for summary judgment, and Commonwealth filed a cross motion for summary judgment (accompanied by a 40 page affidavit,

ney's fees against unsuccessful Title VII *plaintiffs* could be assessed on the same basis as against unsuccessful defendants, a stance the panel was later forced to rescind. 568 F.2d 1073 (5th Cir.1978) (on petition for rehearing). I am unable to see any relevance of this decision to the present issues.

prepared by a member of Commonwealth's in-house legal staff, detailing the history of the Title VII controversy, and appending several hundred pages of documentary exhibits). The district court concluded that no genuine issues of material fact existed, Fed.R.Civ.P. 56(c), denied Commonwealth's motion, and granted that of the Commission. This appeal followed.

On appeal, Commonwealth asserts that it prevailed against the Commission on claims either frivolous or undertaken in bad faith, and is therefore entitled to an award of attorney's fees pursuant to 706(k) of Title VII.

## II. *The Issues Upon Which Commonwealth Claims to Have Prevailed*

Commonwealth's Complaint asserted three separate "claims for relief" in which it purportedly prevailed:

*A.* The first advanced two theories to conclude that Commonwealth had been the prevailing party under the consent decree: (1) that the decree contained "no remedy or relief for many of the more substantial discriminatory practices [that had been originally] alleged in the [Commission's original charge and subsequent determination]"; and (2) that the decree ultimately entered by the parties afforded less relief than had been offered by Commonwealth to the Commission in earlier conciliation negotiations.

*B.* The second asserted that Commonwealth had been a prevailing party against the Commission because 77 of the 109 names initially identified as likely victims of past discrimination under the provisions of the consent decree, were ultimately withdrawn.

*C.* The third asserted that Commonwealth was a prevailing party in its successful effort to defeat (prior to entering the consent decree) the Commission's attempt to evade the effect of Chapter XI's automatic stay provision which barred the Commission from commencing its Title VII suit in district court.

## A. and B. *Alleged Only—Partial Success of Commission*

As noted in the text of the dissent, a Title VII plaintiff may be considered the prevailing party for attorney's fee purposes if he succeeds on " 'any significant issue in litigation which achieves some of the benefit ... sought in bringing the suit.' " *Hensley v. Eckerhart,* —— U.S. ——, ——, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). It seems to me to be axiomatic that if the plaintiff is "the" prevailing party and thus entitled to attorney's fees, the defendant cannot also be "the" prevailing party in the same litigation on the same issues and also entitled to attorney's fees agains the "other" prevailing party. See Title VII, Section 706(k): "[T]he Court, in its discretion, may allow *the* prevailing party ... a reasonable attorney's fees as part of the costs."

Comparing the Commission's initial charge and subsequent determination of discrimination against Puerto Ricans and women in hiring and promotion with the considerable relief afforded to both groups pursuant to the consent decree (a yardstick for measuring success that Commonwealth itself proposes in its complaint), in light of the entire record, the relief achieved by the Commission on the merits (to increase employment of women and Puerto Ricans at the entry level, a $1,000,000 allotment for claimants of past discrimination, and $50,000 a year in programs to recruit and promote members of this group) cannot be considered insignificant, nor could it be concluded that the Commission was not, at the very least, a significant catalytic factor in effecting such relief.[1] While Commonwealth might be said to have been successful in ameliorating its defeats to the Commission, such reduced losses cannot be considered the prevailing success upon which award of attorney's fees may be based.

[1] Although Commonwealth claims that it was willing early in its negotiations with the Commission to voluntarily comply with certain of the Commission's demands, it does not deny that such offers were made in direct response to the Commission's proceedings, nor that the Commission was the precipitating cause of either these early offers or the remedial action to which Commonwealth ultimately consented pursuant to the decree.

Even if the Commission rejected chances of a more advantageous settlement (as Commonwealth asserts) or Commonwealth's negotiation ability did, as it contends, successfully preserve many features of a foreign service employment program (that *it* considered important and asserts was the subject of attack by the Commission during the parties' conciliation negotiations), interim victories and defeats within the settlement negotiation process are immaterial to the ultimate issue of whether a plaintiff instead of a defendant is the prevailing party under the settlement reached. Settlement efforts refused along the way are "of no moment". *Fernandes v. Limmer,* 663 F.2d 619, 637 (5th Cir.1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 5, 73 L.Ed.2d 1395 (1982). The consent decree here afforded considerable relief, some of the significant benefit sought by the Commission's suit. As we have long held, a plaintiff need not obtain a judgment or settlement satisfying *every* claim asserted in order to "prevail". *Id.* Thus, even if the preservation of Commonwealth's foreign service program (by which bonus incentives were given to non-Puerto Ricans to work in Puerto Rico) was a victory for it and a defeat for the Commission, in the context of the suit as a whole, the defendant could not be a prevailing party.

Likewise meritless is Commonwealth's argument that it "prevailed" because, by entering the settlement, it reduced its potential liability for past discrimination to a fraction of that originally claimed or because 77 of the names initially submitted by the Commission were ultimately withdrawn. In reducing its overall potential liability for past discrimination from an initially claimed $2,800,000 to $1,000,000, Commonwealth achieved neither more or less than does any defendant who agrees by settlement to partially satisfy a plaintiff's claim, and thus avoids the risk of having to satisfy the whole of the plaintiff's original claimed damages following a trial on the merits. Analogously, by successfully opposing certain individual claimants of the group initially proposed by the Commission, Commonwealth has done no more than a defendant who succeeds

in having certain party plaintiffs dismissed in a suit ultimately lost on the merits.

Although Commonwealth may have, as it maintains, preserved policies deemed important to its operations, reduced its potential aggregate liability from several million dollars to one million dollars, and reduced the number of claimants initially proposed by the Commission as victims of past hiring discrimination, the incremental lessening of losses that these "victories" represent cannot be equated with a positive receipt of money damages, benefits, or injunctive relief. The civil rights plaintiff here has "lost" only that which it might have gained from the defendant, while the civil rights defendant has only "gained" the opportunity of keeping a part of what it already had. Its victory consisted of losing less than it might have.

The benefits received by the Commission were substantial, not nominal. Thus, even if the defendant settled on terms *it* regarded as advantageous, the Commission remained as a partially successful civil rights plaintiff, a "prevailing party" under *Hensley v. Eckerhart, supra.*

C. *Commonwealth's Procedural Victory with Regard to Chapter XI Stay*

In *Hanrahan v. Hampton,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980), the Supreme Court made plain that, to be awarded attorney's fees as a "prevailing party" in civil rights litigation, a party may be so entitled only where he "has established his entitlement to some relief on the *merits* of his claim." 446 U.S. at 747, 100 S.Ct. at 1989 (emphasis added). Commonwealth's only other purported victory, defeating the Commission's attempt to avoid the automatic stay provision of Chapter XI, is exactly the species of mere interlocutory procedural victory rejected as insufficient to support a fee award in *Hanrahan. Accord: Fernandes v. Limmer, supra,* 663 F.2d at 637 (rejecting "interim setbacks on interlocutory motions" as immaterial to the determination of which party is the "prevailing" party).