**HOUSTON AGRICULTURAL CREDIT CORPORATION, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 83–2370.

United States Court of Appeals, Fifth Circuit.

July 16, 1984.

Rehearing Denied Aug. 30, 1984.

Daniel K. Hedges, U.S. Atty., James R. Gough, Asst. U.S. Atty., Houston, Tex., Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Chief, Appellate Section, Richard Farber, Elaine F. Ferris, Attys., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant-appellant.

Chamberlain, Hrdlicka, White, Johnson & Williams, Bruce Locke, George A. Hrdlicka, Shelley Cashion, Houston, Tex., for plaintiff-appellee.

Before TATE, JOLLY and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

The government appeals from the award of attorney's fees to Houston Agricultural Credit Corporation under the Equal Access to Justice Act, 28 U.S.C. § 2412 (1981) based on the district court's conclusion that the position of the Internal Revenue Service was not substantially justified. We reverse.

## I.

The taxpayer, Houston Agricultural Credit Corporation (Houston), is a state-chartered financial institution engaged in making loans to Texas farmers and ranchers. On its federal income tax returns for 1974 and 1975, Houston claimed deductions for anticipated bad debt losses by adding to its reserve for bad debts as authorized by 26 I.R.C. § 166(c). The dispute arose over the method of computing the reserve. Houston considered itself the functional equivalent of a federally-chartered production credit association, which by statute was permitted a total reserve of 3.5 percent of its loans. See 12 U.S.C. § 2095 (1980). Based on this assumption, Houston took deductions of $50,000 and $92,000 for 1974 and 1975, and thereby established a bad debt reserve which represented 3.191 per cent of its outstanding loans ($514,381).

The Internal Revenue Service (IRS), on audit, administrative review, and at trial contended that Houston's bad debt reserve should be based on an average of Houston's actual bad debt losses for the past six years. This position was bottomed on *Black Motor Co. v. Commissioner*, 41 B.T.A. 300 (1940), *aff'd on other grounds*, 125 F.2d 977 (6th Cir.1942). Using this formula, the Commissioner determined that Houston was liable for tax deficiencies of $31,791.62 in 1974 and $55,710.24 in 1975.

In January 1980, Houston paid the deficiencies and claimed a refund for the entire amount of the assessed taxes, which the IRS administratively denied. Houston then filed suit for a refund in the district court, asserting that the Commissioner had abused his discretion in disallowing its additions to its bad debt reserve.

At trial, Houston presented several witnesses who testified that agricultural lending was much riskier than commercial lending because of its vulnerability to fluctuating market conditions, insect infestations, and severe weather conditions, such as hurricanes, droughts and floods. Houston established that if a hurricane or similar calamity strikes a given area, a large number of farmers will suffer catastrophic losses; their lenders must then absorb these extensive losses in that year.

Two officials of the Federal Intermediate Credit Bank stated that the risk exposure of agricultural lenders was increasing drastically because of the switch from family farms to larger organizations, and because higher costs of farming required the size of the lender's loans to each farmer to increase dramatically. Severe loss by the farm lender, according to one official, is "not a matter of whether. It's just a matter of when." In addition, these witnesses testified that the six year average used in the *Black Motor* formula was too short a period for accurately predicting the percentage of agricultural debts that will be uncollectible in the future. They believed that Houston's reserves were reasonable, while another official felt the reserves were too low.

The auditor for the IRS testified he used the *Black Motor* formula because it was an accepted method of evaluating losses. He also testified that Houston's average bad debt loss over a twenty-one year period was not significantly different from the six year average he used. The auditor neither gave weight to the fact that Houston was an agricultural lender nor considered whether agricultural lending was riskier than commercial lending.

The jury found that the Commissioner had abused his discretion in disallowing the deductions and returned a verdict in favor of Houston.

On a motion by Houston, the court considered whether the taxpayer was entitled to attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A),

which provides that the court may award attorney's fees and costs "to a prevailing party other than the United States ... in any civil action ... brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." The court concluded that the government "failed to meet its burden of proving that its position was substantially justified within the meaning of the statute" and awarded Houston $25,028.18 in attorney's fees. The government then filed this appeal.

## II.

We held in *Knights of the K.K.K. v. East Baton Rouge*, 679 F.2d 64 (5th Cir.1982), that an award or denial of attorney's fees is reviewed under an abuse of discretion standard. We agree with the D.C. Circuit which held in *Spencer v. N.L.R.B.*, 712 F.2d 539 (D.C.Cir.1983), that the "abuse of discretion standard" under the EAJA should be given the same special meaning accorded that term in the review of preliminary injunctions and other preliminary orders: "On one hand, it has been interpreted to require highly deferential review of district courts' tentative findings of fact; such determinations are not overturned unless 'clearly erroneous' and, in practice, are rarely subjected to critical examination." [citations omitted]. "On the other hand, it allows for close scrutiny of district courts' rulings on questions of law. [citations omitted]. Id. at 565; See *United States v. 2,116 Boxes of Boned Beef*, 726 F.2d 1481 (10th Cir.1984); *Foster v. Tourtellotte*, 704 F.2d 1109 (9th Cir.1983).

■ A party prevailing against the federal government is entitled to attorney's fees unless the government's position was substantially justified or special circumstances would make an award unjust. *Knights of the KKK v. East Baton Rouge Parish School Board*, 679 F.2d at 68. The test for substantial justification is reasonableness. *S & H Riggers & Erectors, Inc. v. O.S.H.R.C.*, 672 F.2d 426 at 430, H.R.

Rep. No. 1418, 96th Cong., 2d Sess. 10, reprinted in 1980 U.S.CODE CONG. & AD. NEWS 4953, 4989. No award will be made if the government can show that its position had a reasonable basis both in law and fact. *Knights of the KKK v. East Baton Rouge Parish School Board*, 679 F.2d at 68, *S & H Riggers & Erectors, Inc. v. O.S.H.R.C.*, 672 F.2d at 430, H.R.Rep. No. 1418, 96th Cong., 2d Sess. 11, reprinted in 1980 U.S.CODE CONG. & AD.NEWS, 4953, 4989.

■ Although there is no controversy over the meaning of substantial justification, the circuits disagree over the meaning of "position." Some define the term to mean only the government's litigation position. *Spencer v. N.L.R.B.*, 712 F.2d 539 (D.C.Cir.1983), *Tyler Business Services, Inc. v. N.L.R.B.*, 695 F.2d 73 (4th Cir.1982). Other circuits consider the government's overall position including the underlying agency position, *Rawlings v. Heckler*, 725 F.2d 1192 (9th Cir.1984), *Natural Resources Defense Council, Inc. v. EPA*, 703 F.2d 700 (3d Cir.1983). This issue is undecided in this circuit, *Knights of KKK*, 679 F.2d at 68, and it is unnecessary for us to decide the question in this case because the position of the government at the agency level was identical to its position at trial.

Houston based its refund suit on the premise that it was the functional equivalent of a federally chartered production credit association, and could claim the 3.5 per cent bad debt reserve provided by statute. Section 2095 of 12 U.S.C., however, by its express terms applies only to federally chartered institutions. Considered as a question of legal interpretation, the government cannot be faulted for assuming that the statute applied only to federally chartered production credit associations. Houston, as a state chartered institution, did not fit the statute's own definition of an organization entitled to a 3.5 per cent bad debt reserve. Since the statute's method of estimating reserves was inapplicable to Hous-

ton on its face, the government was justified in using another formula.[1]

In choosing another formula, the government did not arbitrarily invent a new approach. The Internal Revenue Service followed a method first approved by the Sixth Circuit in *Black Motor* and since approved by a number of other courts. See *Thor Power Tool v. C.I.R.*, 439 U.S. 522, 99 S.Ct. 773, 58 L.Ed.2d 785 (1979), *Roth Steel Tube Co. v. C.I.C.*, 620 F.2d 1176 (6th Cir.1980), *Atlantic Discount Co., Inc. v. U.S.*, 473 F.2d 412 (5th Cir.1973), *Lenamon v. C.I.R.*, 296 F.2d 844 (5th Cir.1961), *S.W. Coe & Co. v. Dallman*, 216 F.2d 566 (7th Cir.1954).

We must also consider whether the government's reliance on the *Black Motor* formula was reasonable under these particular facts. The IRS compared the average bad debt loss of Houston over a twenty-one year period with the six-year average required by the *Black Motor* formula and found no significant difference. This adds considerable support to the Internal Revenue Service argument that it used a reasoned approach based on the particular history of Houston in deciding the manner of computing an adequate bad debt reserve for the taxpayer.

■ Houston's argument that the finding by the jury that the Commissioner abused his discretion automatically requires an award of attorney's fees must fail. Were we to adopt Houston's reasoning, the government would be liable for attorney's fees whenever it loses a tax case, a result the Act clearly does not intend. *S & H Riggers & Erectors, Inc. v. O.S.H.R.C.*, 672 F.2d at 430. The legislative history of the Act reveals that Congress rejected virtually automatic awards to prevailing parties because they "might have a chilling effect on reasonable government enforcement efforts." S.Rep. No. 253, Report of the Comm. on the Judiciary on S.265, 96th Cong., 1st Sess. 11 (1979).

Based on the evidence in this record, we conclude that the district court abused its discretion in holding that the government's use of the *Black Motor* formula to determine the appropriate bad debt reserve was not substantially justified. Accordingly, the award of attorney's fees against the government is REVERSED.

---

1. The government does not appeal the district court's judgment in favor of Houston. Using the *Black Motor* formula, the reserve would not have covered Houston's losses in 1970, 1971, and 1975. The government concedes that this evidence, in combination with the experience of

other agricultural lenders, the fluctuating nature of the agricultural lending business and the legislative history of 12 U.S.C. § 2095 was sufficient to support the jury verdict that the Commissioner abused his discretion in treating Houston as it did any commercial lender.