**Pedro CERVANTEZ and Juan Lozano, Individually and on Behalf of all others similarly situated, Plaintiffs-Appellants,**

v.

**Gary WHITFIELD, Individually and as Officer Texas Department of Public Safety, et al., Defendants-Appellees.**

No. 84–1736.

United States Court of Appeals, Fifth Circuit.

Nov. 18, 1985.

Edward J. Tuddenham, Texas Rural Legal Aid, Inc., Farm Worker Div., Hereford, Tex., Lee J. Teran, San Antonio, Tex., for plaintiffs-appellants.

William Kanter, Charles T. Meyers, Washington, D.C., for I.N.S.

Before RANDALL, DAVIS, and HILL, Circuit Judges.

## OPINION

ROBERT MADDEN HILL, Circuit Judge:

Two United States citizens of Hispanic descent sought declaratory and injunctive relief against the Immigration and Naturalization Service (INS) concerning the detention of Hispanic persons believed to be aliens. After a settlement of their dispute with the INS, plaintiffs sought attorney's fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. The district court denied the fees and costs, finding that plaintiffs were not prevailing parties and that the government's litigation was substantially justified. We affirm.

## I. FACTS

Plaintiffs, Pedro Cervantez and Juan Lozano, reside in the county of Deaf Smith, Texas. In August 1979, Cervantez was a passenger in a truck following a truck driven by his brother. When his brother's truck was stopped by two officers of the Texas Department of Public Safety, the truck occupied by Cervantez also pulled over. Cervantez was asked by the officers to produce his visa or birth certificate. Upon his informing the officers that the documents proving his United States citizenship (by birth) were at home, Cervantez was arrested and taken to the Deaf Smith County Jail where he remained for three days until Tom Smiley, a Border Patrol Agent with the INS, came to the jail and directed Cervantez' release.[1]

Lozano was asked to produce his birth certificate when he stopped at an office of Texas Department of Public Safety to ask for directions. He was held for two hours until his wife arrived and corroborated his United States citizenship.[2]

Cervantez and Lozano filed an action for declaratory and injunctive relief and damages against the director and several officers of the Texas Department of Public Safety (DPS), the Sheriff of Deaf Smith County, Border Patrol Agent Tom Smiley, and the INS.[3] Plaintiffs sought to bring the action as a class action on behalf of all Hispanic persons subject to the practices of the defendants challenged in the complaint.

---

1. Cervantez alleged the following violations of law regarding his arrest and incarceration: that he "was detained and interrogated without a reasonable suspicion that he was involved in criminal conduct, and was arrested without probable cause of a violation of any law;" that "[n]o citation, warrant for arrest, indictment, or information was issued;" that he "was never brought before a judge, a court, or magistrate;" that "[n]o bail bond was set;" that he was not informed of his right to counsel, nor his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) nor his rights pursuant to 8 C.F.R. § 287.3.

2. Lozano alleged the same improprieties in his detention as did Cervantez, *see supra* note 1, except he did not assert failure to be brought before a court and failure to have bond set.

3. Plaintiffs sought the following relief in their original complaint:

   [that the court]

   c. Declare that the acts, practices, and policies of defendants violated the rights of plaintiffs secured by the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution; the Civil Rights Act of 1871, 42 U.S.C. § 1983; the Immigration and Nationality Act, 8 U.S.C. §§ 1282 and 1357; and the Supremacy Clause Article VI, Clause 2 and Article I, Section 8 of the United States Constitution.

   d. Issue a preliminary and permanent injunction against defendant officials of DPS ordering them to:

   1. Cease their policy and practice of approaching, questioning, and detaining Hispanic persons about their immigration status without warrant or reasonable suspicion that the person is involved in criminal activity;

   2. Cease their policy and practice of arresting Hispanic persons without warrant or probable cause to believe that the person is involved in criminal conduct;

   3. Cease their policy and practice of incarcerating Hispanic persons for INS officials without warrant or probable cause to believe such persons have committed any crime;

   4. Cease their policy and practice of incarcerating Hispanic persons on an immigration detainer without bringing such persons before a magistrate without unnecessary delay;

   5. Cease their policy and practice of interrogating and detaining Hispanic persons without informing them of their rights to remain silent and to counsel, and their rights under *Miranda v. Arizona,* supra;

   e. Issue a preliminary and permanent injunction against defendant McPHEARSON and DEAF SMITH COUNTY ordering them to:

   1. Cease their policy and practice of incarcerating Hispanic persons for INS officials without a warrant or lawful authority;

   2. Cease their policy and practice of incarcerating Hispanic persons on an immigration detainer without admitting such persons to bail, advising such persons of their right to counsel, allowing such persons visitors and telephone calls, and taking such persons before a magistrate.

   f. Issue a preliminary and permanent injunction against defendant officials of INS ordering them to cease their policy and practice of interrogating and detaining Hispanic persons held by local and state law enforcement officials without warrant or lawful authority.

   g. Award actual and punitive damages to plaintiffs according to proof as established at the time of trial;

   h. Award plaintiffs costs of this action and reasonable attorneys fees....

After extensive discovery and the filing of a motion to dismiss by the INS and agent Smiley, plaintiffs sought leave to amend their complaint in part to clarify the relief sought. Leave was granted. In their amended complaint, the plaintiffs sought a preliminary and permanent injunction against officials of the INS ordering them to:

1. Cease their practice of interrogating Hispanic persons held by state and local law enforcement authorities without warrant or reasonable belief, supported by articulable facts, that such persons are aliens;

2. Cease their practice of detaining Hispanic persons held by state and local law enforcement authorities without warrant or probable cause to believe that such persons are aliens in the United States in violation of 8 U.S.C. § 1251;

3. Cease their practice of interrogating and detaining Hispanic persons beyond 24 hours without first advising such persons of their rights pursuant to 8 C.F.R. § 287.3, bringing such persons before an immigration officer to determine whether there is probable cause that the person is deportable, and serving such persons with a properly executed Order to Show Cause or a properly executed Request to Depart Voluntarily from the United States.

In the amended complaint, plaintiffs described the alleged illegal behavior of the INS and agent Smiley as follows:

The actions of Defendant TOM SMILEY were taken pursuant to a policy and practice of the Defendant IMMIGRATION AND NATURALIZATION SERVICE to encourage, induce and aid the Defendant state and local officers throughout DPS District Five to question, arrest, detain and incarcerate persons of Hispanic descent for investigation by INS. In addition, the actions of Defendant SMILEY were taken pursuant to a policy and practice of the Defendant INS not to comply with the provisions of 8 C.F.R. § 287.3 in that INS officers do not serve orders to show cause or set bail on persons detained by state or local officials within 24 hours.

In their claims for relief, plaintiffs specified the following claims against the INS and agent Smiley:

64. Defendants INS and SMILEY induced and encouraged the other Defendants and conspired with other Defendants in this action to engage in the illegal conduct set forth in the First, Second, Third, Fourth, Fifth, Sixth and Seventh Claims for Relief. [These claims pertain to the various alleged violations of the rights of plaintiffs and other persons of Hispanic descent subjected to questioning, arrest, detention, and incarceration because they are of Hispanic descent. Specific allegations concerning the named plaintiffs are summarized in notes 1 and 2 *supra.*]

65. Defendants INS and SMILEY further failed to examine Plaintiff CERVANTEZ within 24 hours of his arrest as required by 8 C.F.R. § 287.3.

66. The conduct of Defendants INS and SMILEY violates the Fourth, Fifth and Sixth Amendments to the United States Constitution and the Civil Rights Act of 1871 (42 U.S.C., 1983, § 1985(3)), the Immigration and Nationality Act, §§ 287 and 242 (8 U.S.C. §§ 1252 and 1357), the Code of Federal Regulations, Title 8, Section 287.3 and the United States Constitution, Article VI, Clause 2 and Article I, Section 8.

Prior to a ruling on the motion to dismiss, plaintiffs, the INS and agent Smiley entered into a stipulation including the following provisions:

2. It is the policy of the United States Department of Justice, of which the INS is a component, with respect to enforcement of the immigration laws by state, county, and local law enforcement agencies that state, county, and local law enforcement agencies do not have authority to question, arrest, or detain persons solely on the grounds that they may be deportable aliens. Only INS and its agents have the authority to question, arrest, or authorize the detention of per-

sons for civil violations of the Immigration laws.

3. An "immigration hold" is an authorization made by an immigration officer to a state, county, or other local law enforcement agency which requests the local agency to detain a person for INS for possible future proceedings under the immigration laws. An immigration hold is an arrest without warrant made pursuant to 8 U.S.C. § 1357(a)(2). As such, an immigration hold may only be authorized by an officer of the INS and only when the officer has determined that there is probable cause to believe that the person to be held (a) is an alien, (b) is in the United States in violation of the immigration laws, and (c) is likely to escape before a warrant can be obtained for his arrest.

4. Pursuant to 8 U.S.C. § 1357(a)(2) and in accordance with INS policy, an immigration hold authorized by an immigration officer expires twenty-four (24) hours after the immigration hold takes effect unless within the 24 hours: (a) the person detained is advised of his rights pursuant to 8 C.F.R. § 287.3 and is seen, in person, by an immigartion [sic] officer and examined to determine whether there is probable cause that the person is deportable or excludable, and (b) either (1) a properly executed Order to Show Cause with notice of available free legal services in the area is served on the detainee or, (2) the detainee voluntarily executes a request to depart voluntarily from the United States. It is INS policy that upon expiration of an immigration hold, the state, county, or local law enforcement agency detaining the person must release from custody any person so held.

5. The Department of Justice urges state, county, and other local law enforcement agencies that, when such agencies have custody of a person who is suspected of being in violation of the immigration laws, or is subject to an immigration hold, any state criminal or traffic charges pending against such person should be processed in the same manner as state criminal or traffic charges pending against persons not suspected of being aliens. Disposition of state criminal or traffic charges should not be delayed solely because a person is suspected of being an alien or is subject to an immigration hold.

6. After the execution of this Stipulation, Defendant INS shall reensure that all of its officers in the Northern Judicial District of Texas are familiar with the policies, procedures, and requirements described in paragraphs 2, 3, 4, and 5 above by distributing copies of this Stipulation to all such officers. Further, INS shall contact each state, county, and local law enforcement agency operating in the territory covered by the Lubbock and Amarillo Stations of the Border Patrol and request that those agencies ensure that each of their officers is informed of the policies procedures and requirements stated in paragraphs two (2) through five (5) above.

7. The Amarillo and Lubbock Stations of the Border Patrol will maintain records of notification by state, county, or other local law enforcement agencies concerning persons suspected of being in violation of the immigration laws. Such records shall contain the following information: (a) the name of the agency notifying the INS; (b) the name of the suspected alien; (c) the date and time of the notification; (d) the action taken or authorized by INS in response to the notification; (e) the date and time the INS action is taken or authorized; and (f) the initials or name of the officer taking the action. INS will make a good faith effort to determine and record the state or local charges pending against the suspected alien at the time INS action is taken or authorized.

8. The Amarillo and Lubbock Stations of the Border Patrol will create and maintain the records described in paragraph seven (7). Such records will be created for three (3) years from the date this Stipulation is final and approved by

the Court. Any records so created will be maintained for three (3) years.

(paragraphs 1 and 9 omitted)

Subsequent to the above stipulation, plaintiffs' claims against the INS and agent Smiley were dismissed and plaintiffs filed a motion for attorney's fees and costs against the INS. This motion was denied [4] and it is from that denial that this appeal has been brought.

## II. ANALYSIS

Plaintiffs sought attorney's fees and costs from the INS pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.[5] Under the relevant provision, subsection (d), *see supra* note 4, in order to receive fees, plaintiffs must be prevailing parties *and* the court must find that the government's position was not "substantially justified."

Plaintiffs at oral argument waived an appeal under the discretionary provision of subsection (b). Consequently, only subsection (d) is considered in this opinion. Sub-

---

**4.** The motion was initially denied on June 8, 1984, prior to plaintiffs' response to affidavits submitted by INS the day before. Pursuant to plaintiffs' motion to reconsider or in the alternative to hold a hearing to resolve the factual disputes, the district court entered a second order denying a hearing and the fees and costs.

**5.** The statute provides for costs in pertinent part as follows:

> Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title, but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. A judgment for costs when taxed against the United States shall, in an amount established by statute, court rule, or order, be limited to reimbursing in whole or in part the prevailing party for the costs incurred by such party in the litigation.

28 U.S.C. § 2412(a) (as amended by Pub.L. No. 99–80, § 2(a)(1), 99 Stat. 184).

> The statute provides for attorney's fees in pertinent part as follows:

>> Unless expressly prohibited by statute, a court may award reasonable fees and ex-

section (d) is mandatory inasmuch as it states that a court *"must* award fees to qualifying parties under the circumstances of (d)(1)(A)" *Alspach v. District Director of Internal Revenue,* 527 F.Supp. 225, 228 (D.Md.1981) (quoting H.Conf.Rep. 96–1434, 96th Cong., 2d Sess., *reprinted in* [1980] U.S.Code Cong. & Ad.News. 4953, 5003, 5010). Nevertheless, we review the district court's denial of an award under the EAJA under an abuse of discretion standard. *Knights of the Ku Klux Klan Realm of Louisiana v. East Baton Rouge Parish School Board,* 679 F.2d 64, 69 (5th Cir. 1982). However, with respect to the EAJA, "abuse of discretion" is

> given the same special meaning accorded that term in the review of preliminary injunctions and other preliminary orders: "On one hand, it has been interpreted to require highly deferential review of district courts' tentative findings of fact; such determinations are not overturned unless 'clearly erroneous' and, in practice, are rarely subjected to critical examination." ... "On the other hand, it al-

---

> penses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

28 U.S.C. § 2412(b) (as amended by Pub.L. No. 99–80, § 2(a)(1), 99 Stat. 184).

> The statute also provides:

>> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (as amended by Pub.L. No. 99–80, § 2(a)(2), 99 Stat. 184).

lows for close scrutiny of district courts' rulings on questions of law."

*Houston Agricultural Credit Corp. v. United States,* 736 F.2d 233, 235 (5th Cir. 1984) (citations omitted) (quoting *Spencer v. N.L.R.B.,* 712 F.2d 539, 565 (D.C.Cir. 1983)).

### A. *Prevailing Parties*

The district court found that plaintiffs were not prevailing parties within the meaning of the statute. It defined prevailing parties congruently with the interpretation of the term in cases brought under analogous statutes, relying particularly on this Court's expressed standard in *Commonwealth Oil Refining Co., Inc. v. E.E.O.C.,* 720 F.2d 1383 (5th Cir.1983) (pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k)). In *Commonwealth Oil,* this Court again reaffirmed its "test of status as 'prevailing party' in civil rights cases." *Id.* at 1385. " 'The proper focus is whether the plaintiff has been successful on the *central issue* ... as exhibited by the fact that he has acquired *the primary relief sought.*' " *Id.* (quoting *Iranian Students Ass'n v. Edwards,* 604 F.2d 352, 353 (5th Cir.1979)) (emphasis in original) (pursuant to Civil Rights Attorney Fees Awards Act, 42 U.S.C. § 1988). As noted in the district court's opinion, this Court has continued to adhere to the standard expressed in *Commonwealth Oil* despite the Supreme Court's acceptance of a different standard adopted by several other Circuits, *i.e.,* that to be a prevailing party one need only "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing

suit." *Commonwealth Oil,* 720 F.2d at 1385 n. 2 (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)). We apply the *Commonwealth Oil* test of "prevailing party" to this case.

▮ It is not necessary that "formal judicial relief" be granted; a settlement may yield a prevailing party. *See Commonwealth Oil,* 720 F.2d at 1385 & n. 3; *Alspach v. District Director of Internal Revenue,* 527 F.Supp. 225, 228 (D.Md.1981). In determining whether plaintiffs were prevailing parties, we compare the claims raised in the complaint with the relief obtained in the settlement. Only if there is a clear "winner: a plaintiff who carried the day on his major claim," are attorney's fees to be awarded. *See* 720 F.2d at 1385–86.

In examining whether plaintiffs prevailed against the INS, we examine only their claims against the INS and do not weigh the claims against the INS in comparison to the claims against the other defendants, the state officials. While the district court did compare plaintiffs' success on their claims against the INS with their success on their claims against the state officials in a separate settlement, it did so only to illustrate the greater success obtained in the latter settlement. The district court identified plaintiffs' "ultimate goals" with respect to the INS as "(1) to prevent the INS from encouraging local law enforcement officials to detain individuals illegally merely on the suspicion that they may be deportable aliens, and (2) to prevent INS violation of the 24-hour regulation of 8 C.F.R. § 287.3." [6] The district court found

---

**6.** This regulation provides for the disposition of cases of aliens arrested without warrant. It states that:

An alien arrested without a warrant of arrest under the authority contained in section 287(a)(2) of the Immigration and Nationality Act shall be examined as therein provided by an officer other than the arresting officer, unless no other qualified officer is readily available and the taking of the alien before another officer would entail unnecessary delay, in which event the arresting officer, if the conduct of such examination is a part of the duties assigned to him, may examine the

alien. If such examining officer is satisfied that there is prima facie evidence establishing that the arrested alien was entering or attempting to enter the United States in violation of the immigration laws, he shall refer the case to an immigration judge for further inquiry in accordance with Parts 235 and 236 of this chapter or take whatever other action may be appropriate or required under the laws or other regulations applicable to the particular case. If the examining officer is satisfied that there is prima facie evidence establishing that the arrested alien is in the United States in violation of the immigration

that no relief was requested as to the first goal and that all that was obtained in the settlement as to the second goal was "a promise to obey the law." The court further characterized the relief obtained as "only a reaffirmance of what the law is, not an agreement to follow new procedures." As to paragraphs 5 and 6 of the stipulation in which the INS "urges" state, county, and other local law enforcement agencies not to delay the disposition of state criminal or traffic charges "solely because a person is suspected of being an alien or is subject to an immigration hold," promises to inform the agencies of INS policies, and promises to reensure that its own officers are familiar with the policies, the court found that the provisions were "merely informational" as to the INS officers and did not operate "as a constraint on any state, county, or local law enforcement agencies." As to paragraphs 7 and 8 of the stipulation in which the INS agreed to "maintain records of notification by state, county, or other local law enforcement agencies concerning persons suspected of being in violation of the immigration laws," the court found that "[t]he question of keeping records was not a central issue in this litigation and was not one of the remedies sought in either the original or amended complaints" and that although "the recordkeeping will facilitate monitoring future compliance with the law by the federal defendants ... this doesn't make the plaintiffs prevailing parties."

The district court's findings, while not strictly findings of fact in the same sense as if an opinion had issued in the case, nevertheless are the relevant factual findings in this case and thus we would reverse only if we found the court's comparison of the complaint with the settlement to contain clearly erroneous findings. Of course, any potential errors of law would receive stricter scrutiny. *See Houston Agricultural Credit Corp.*, 736 F.2d at 235. Our review of the relief sought in the complaint and the relief obtained in the settlement leads us to conclude that the district court's findings are not clearly erroneous.

As to the first aspect of relief requested, INS did not agree to terminate a "policy" of interrogating individuals of Hispanic heritage held by local authorities. Therefore, plaintiffs did not prevail on this point. As to the second and third aspects of requested relief, plaintiffs gained a promise that INS would comply with existing law that prohibits detention of individuals absent probable cause and detention of individuals for more than 24 hours without advising them of their rights. Although a defendant's promise to obey the law may indicate that a party has prevailed for purposes of the EAJA if there is record evidence that the defendant disobeyed the law, *Environmental Defense Fund, Inc. v. Watt*, 554 F.Supp. 36, 39 (E.D.N.Y.1982), there is insufficient evidence in this case that INS actually disobeyed the law. *Com-*

laws, further action in the case shall be taken as provided in Part 242 of this chapter. After the examining officer has determined that formal proceedings under sections 236, 237, or 242 of the Act will be instituted, an alien arrested without warrant of arrest shall be advised of the reason of his arrest and his right to be represented by counsel of his own choice, at no expense to the Government. He shall also be provided with a list of the available free legal services programs qualified under Part 292a of this chapter and organizations recognized pursuant to § 292.2 of this chapter, located in the district where his deportation hearing will be held. It shall be noted on Form I–213 that such a list was provided to the alien. *He shall also be advised that any statement he makes may be used against him in a subsequent proceeding and that a decision will be made within 24 hours*

*or less as to whether he will be continued in custody or released on bond or recognizance. Unless voluntary departure has been granted pursuant to § 242.5 of this chapter, the alien's case shall be presented promptly, and in any event within 24 hours,* to the district director, acting district director, deputy district director, assistant district director for investigations, officers in charge at Agana, GU; Albany, NY; Charlotte Amalie, VI; Cincinnati, OH; Hammond, IN; Milwaukee, WI; Norfolk, VA; Oklahoma City, OK; Pittsburgh, PA; Providence, RI; Salt Lake City, UT; St. Louis, MO; Spokane, WA *for a determination as to whether there is prima facie evidence that the arrested alien is in the United States in violation of law and for issuance of an order to show cause and warrant of arrest prescribed in Part 242 of this chapter.*
8 C.F.R. § 287.3 (emphasis added).

*pare id.* Although in the typical case an evidentiary hearing is required in order to resolve issues of credibility and conflicting assertions of fact, *Iranian Students Association v. Sawyer,* 639 F.2d 1160, 1163 (5th Cir.1981), in this case plaintiffs had a sufficient opportunity to develop the factual record in support of their application. *Cf. Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941. They submitted lengthy affidavits and numerous exhibits in support of their claim that INS had acted wrongfully. However, even if credibility and contested factual issues are resolved in favor of plaintiffs, the evidence they submitted indicates no more than sporadic and isolated instances of INS neglect to abide by its regulations. The evidence submitted in the record is insufficient to lead to a determination that plaintiffs prevailed against INS.

█ In short, the district court's conclusion that plaintiffs gained little or nothing from the INS by the institution of this litigation that they could not have obtained without litigation is not clearly erroneous. Under these circumstances, an award of fees under the EAJA is inappropriate. While plaintiffs did obtain new record-keeping requirements as part of their relief and this relief was congruent with plaintiffs' objectives in the litigation, we also do not find error in the district court's finding that this was not relief on a central issue as identified by the district court. While plaintiffs have urged the adoption of the *Hensley v. Eckerhart* standard, they maintained at oral argument that even under *Commonwealth Oil,* which remains the law in this Circuit, they should have been found to be prevailing parties. Finding no basis for reversing the district court's finding that plaintiffs did not prevail under the standard of *Commonwealth Oil,* we affirm.

**B. Substantial Justification**

Because we agree with the district court that plaintiffs were not the prevailing parties, we need not determine whether the position of the INS was substantially justified. However, we note that on August 5, 1985, the EAJA was amended, Equal Access to Justice Act, Extension and Amendment, Pub.L. No. 99–80, 99 Stat. 183 (1985) (to be codified at 28 U.S.C. § 2412), and Congress clarified the definition of "position":

(D) 'position of the United States' means, in addition to the position taken in the civil action, the action or failure to act by the agency upon which the civil action is based; except that fees and other expenses may not be awarded in which the party has unreasonably protracted the proceedings.

Pub.L. No. 99–80, § 2(c)(2)(B), 99 Stat. 185 (to be codified at 28 U.S.C. § 2412(d)(2)(D)). *See also* H.Rep. No. 120, 99th Cong., 1st Sess. 12 (1985), *reprinted in* 1985 U.S.C. Code Cong. & Ad.News 132, 140 ("the Committee expressly rejects the holding ... that the only government 'position' to be scrutinized in the context of an EAJA case is that taken in the litigation itself"). Congress provided that "the amendments made by this Act shall apply to cases pending on or commenced on or after the date of the enactment of this Act." Pub.L. No. 99–80, § 7(a), 99 Stat. 186.

For the reason that the district court did not "abuse its discretion" in finding plaintiffs not to be prevailing parties under the EAJA, we affirm the denial of attorney's fees and costs.

AFFIRMED.