**TEXAS STATE TEACHERS ASSOCIATION, Garland Education Association, Joe Atkins and Janice Hill, Plaintiffs-Appellants,**

v.

**GARLAND INDEPENDENT SCHOOL DISTRICT, et al., Defendants-Appellees.**

No. 84–1833.

United States Court of Appeals, Fifth Circuit.

Dec. 6, 1985.

this Court expresses no opinion on the correctness of that determination.

Robert H. Chanin, Jeremiah A. Collins, Washington, D.C., for plaintiffs-appellants.

Law Offices of Earl Luna, Earl Luna, Robert E. Luna, Dallas, Tex., for defendants-appellees.

Before GARZA, JOHNSON and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

This appeal involves a claim brought by a teacher organization against a school district under 42 U.S.C. § 1983 (1981). Appellants contend that policies of appellees deny them access to school grounds and school media facilities and restrain free speech in violation of their First and Fourteenth Amendment rights. Appellants are the Texas State Teachers Association (TSTA); the Garland Education Association (GEA), a TSTA local affiliate; Joe Atkins, a TSTA employee; and Janice Hill, a GEA member employed as a teacher in the Garland Independent School District (GISD). Appellees are GISD; Harris Hill, Donald Center, Cash Birdwell, Jim Burns, Mike Cloud, Don Hollenshead, and M.D. Williams, IV, in their official capacities as GISD Trustees; and Eli Douglas in his official capacity as GISD Superintendent. The district court determined that appellants had no constitutionally protected right of free speech access to GISD schools, and granted summary judgment in favor of appellees. TSTA appeals from the grant of summary judgment against them, and from the denial of their motion for partial summary judgment.

## FACTS

TSTA is a voluntary employee organization. It sought to distribute TSTA information to teachers in GISD schools during school hours. TSTA also wanted to use school communication facilities—including school mailboxes, billboards, and the public address system—as mediums for the distribution of their information.

GISD policy, as expressed in Administrative Regulation 412,[1] totally prohibits any

---

1. Administrative Regulation 412 prohibits representatives of employee organizations from recruiting, organizing, or meeting with GISD teachers on school grounds during school hours. In addition, it denies employee organizations any access to the school's internal mail system, teacher mailboxes, bulletin boards, and public address system. It provides, in pertinent part:

Relationships with employee organizations will be consistent with article 21–904 of the

Texas Education Code. Accordingly, the following procedures will be observed:
1. Employee membership in any organization is a matter of free choice.
2. The central and local school administration position is neutral. It neither encourages nor discourages membership in any employee organization.
3. Faculty meetings called and conducted by the principal are for school-related matters.

"employee organization"[2] from meeting or recruiting during "school hours",[3] and from using school communication facilities for the dissemination of information concerning employee organizations. GISD policy allows employee organizations to meet or recruit teachers on school premises before 8:00 a.m. or after 3:45 p.m. "upon request to and approval by the local principal." GISD policy also allows the distribution of literature on school premises (parking lots, hallways, and placement on teachers' desk) during non-school hours.

On January 8 and 9, 1981, TSTA representatives visited numerous GISD schools during school hours. Relying on GISD Administrative Regulation 412, the principal or assistant principal of most schools refused to permit the TSTA representatives to distribute literature or to meet with GISD teachers.

This lawsuit resulted. Appellants claimed that these GISD policies violated their First and Fourteenth Amendment rights of free speech, free association, and equal protection of the laws, and were unconstitutionally vague and overbroad. Appellants argued that these policies, as interpreted and implemented by school officials,

operated to deny GISD teachers their right to discuss TSTA business even during non-class times such as the lunch hour (several GISD teachers and administrators are members of TSTA). Appellants further contended that school officials routinely granted access to school communication facilities to other commercial and civic organizations (upon approval of the principal), and that "employee organizations" were discriminatorily denied access.

Appellees denied that their policies violated the appellants' First and Fourteenth Amendment rights. They argued that the GISD schools are not a public forum, and therefore appellants have no right of access. Appellees urged that reasonable alternative means of communication were available to TSTA—*i.e.*, meeting after school hours, distributing literature on school property after school hours, or contacting teachers at school or home through the United States Postal Service. Finally, appellees contended that allowing employee organizations to use school facilities would disrupt the learning process and would be contrary to Texas Education Code § 21.904 —which requires a school district to maintain a position of neutrality with respect to

An employee organization matter shall not be part of the agenda.

4. Organizational meetings of local building members before or after school hours may be held in school facilities upon request to and approval by the local school principal. Meetings held before school hours must be adjourned no later than 8:00 a.m. or the privilege will be denied.

5. Group meetings or individual conferences conducted by an elected official of any employee organization for purposes of membership recruitment or any other matter of business, *shall not be conducted on school premises during school hours.* School facilities may be used for such purposes before or after school hours upon request to and approval by the local principal. Meetings held before school hours must be adjourned no later than 8:00 a.m. or the privilege will be denied.

6. The school mail service shall not be used by any employee organization.

7. Distribution of material directly in mailboxes at the school is prohibited.

8. The use of school district equipment and supplies by any employee organization is prohibited.

9. The public address system is for school business only. Association announcements shall not be made on school equipment. School officials interpret the phrase "elected official" in Admin.Reg. 412(5) as including any employee representative, whether or not an elected representative, so long as that employee is "promoting" the organization. School officials interpret Admin.Reg. 412(8) as prohibiting the use of school billboards by employee organizations.

2. "Employee Organization" is defined as any organization whose main purpose is to represent a group of employees in matters of employment practices and procedures. The parties stipulated that both TSTA and GEA are employee organizations within the meaning of the GISD policies.

3. The term "school hours" means "the entire period between 8:00 a.m. and 3:45 p.m. of each school day except for days when school may be let out early."

employee membership in various organizations.[4]

The parties each filed a motion for summary judgment. The district court granted appellants' motion for partial summary judgment as to Admin.Reg. 412(4) and (5)—which permits employee organizations to use school premises for meetings during non-school hours only "upon request to and approval by the local school principal." The district court held that this rule was unconstitutionally overbroad.[5] This holding is not appealed. As to the remainder of appellants' claims, the district court granted appellees' motion for summary judgment and denied appellants' motion. We reverse in part and affirm in part.

## THE RIGHT TO COMMUNICATE

■ In granting the GISD motion for summary judgment, the district court relied upon *Perry Education Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). Under *Perry*, the "existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending upon the character of the property at issue." *Perry*, 460 U.S. at 44, 103 S.Ct. at 954, 74 L.Ed.2d at 804.

*Perry* describes the three types of forums that exist in public property for First Amendment purposes at 460 U.S. 45, 103 S.Ct. 954–55, 74 L.Ed.2d 804: (1) *Public Forums:* These are areas "which by long tradition or by government fiat have been devoted to assembly and debate." Examples are public streets and parks. Speech may not be suppressed for content in these forums unless the state shows a "compelling state interest" and a regulation "narrowly drawn to achieve that end." Public forums are also subject to reasonable "time, place, and manner" restrictions. (2) *Limited Public Forums:* These are fo-

rums which the state has voluntarily "opened for use by the public as a place for expressive activity." As long as the forum remains open, speech is protected to the same extent as in a public forum. In a limited public forum, only "similar entities" to those allowed access have a protected right of speech. (3) *Non-Public Forums:* This is "property which is not by tradition or designation a forum for public communication." In a non-public forum, "the state may reserve the forum for its intended purposes ... so long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view."

GISD policy, as expressed in Administrative Regulation 412, affects two different classes of communications: (1) communications instigated by outside representatives of TSTA who desire access to teachers and school communication facilities; and (2) communications among GISD teachers employed by the schools. A different analysis is relevant to each separate type of communication. Because appellants are appealing a summary judgment, we must look at the evidence in the light most favorable to them. *Simon v. United States*, 711 F.2d 740, 743 (5th Cir.1983).

## A. Communications of Outside TSTA Representatives

### 1. During school hours

■ Schools are not considered traditional public forums in which outside visitors may freely espouse their views. *See Widmar v. Vincent*, 454 U.S. 263, 267 n. 5, 102 S.Ct. 269, 273 n. 5, 70 L.Ed.2d 440, 446 n. 5 (1981); *Perry*, 460 U.S. at 47, 103 S.Ct. at 956, 74 L.Ed.2d at 806. Moreover, school administrators must be given broad discretion in supervising the visitation of the school environment by persons not as-

---

**4.** *Section 21.904 provides, in pertinent part:* "No school district, board of education, superintendent, assistant superintendent, principal, or other administrator benefitting by the funds provided for in this code shall directly or indirectly require or coerce any teacher to join any group, club, committee, organization, or associ-

ation...." TEX.EDUC.CODE § 21.904 (Vernon 1972).

**5.** Because appellants did not show any refusal of access during non-school hours, no relief was given with respect to this holding.

sociated with the school. *Hall v. Board of School Commissioners of Mobile County, Alabama,* 681 F.2d 965 (5th Cir.1982). Because GISD schools are not public forums, outside TSTA representatives have no constitutional right of access. *Professional Association of College Educators v. El Paso County Community College District,* 730 F.2d 258, 263 (5th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 248, 83 L.Ed.2d 186 (1984). Appellants argue, however, that the school has allowed other visitors from civic and commercial groups to meet with teachers during school hours, and has therefore voluntarily created either a public forum or a limited public forum.

■ GISD permits selected groups of educators, textbook salesmen, and representatives of civic and charitable organizations to meet with students and faculty during non-class school hours. These meetings must concern school-sponsored or related activities and must not interfere with class time. Those persons seeking access must obtain prior permission from the school principal, and in some cases, from the Superintendent's office. The district court found that:

> In each case, the policies carefully limit the access of selected visitors by requiring them to report to the principal's office before visiting other parts of the campus, by prohibiting visitors from roaming around the campus unescorted, and by directing the school principals to take every precaution necessary to ensure that the visitors do not interrupt classes.

This selective visitation policy does not create a public forum in GISD schools. *Perry,* 460 U.S. at 47, 103 S.Ct. at 956, 74 L.Ed.2d at 806.

■ In addition, outside TSTA representatives are not due any right of visitation through the doctrine of "limited public forum." Even though the school district has granted access during school hours to representatives of certain civic and commercial groups, "the constitutional right of access would in any event extend only to other entities of similar character." *Id.* Under *Perry,* the visitors allowed access—educators, salesmen, and the like, discussing school-related activities—are not "similar entities" to an employee organization, such as TSTA, concerned with teacher employment practices and procedures.

In *Perry,* a teacher organization (PLEA) sought access to school mail facilities. A rival union (PEA), and civic groups such as the girl scouts, boys' club, and the YMCA were granted access. Nevertheless, the *Perry* court held that even if a limited public forum had been created by the school, PLEA had no constitutional right of access because it was not a similar entity to the groups already allowed access. PLEA was not similar to the civic groups because, unlike those groups, it was an organization concerned with "terms and conditions of teacher employment." 460 U.S. at 48, 103 S.Ct. at 956, 74 L.Ed.2d at 806. The same is true of TSTA's relationship to the civic groups granted access by GISD. PLEA was not similar to PEA because PEA was the exclusive bargaining representative, while PLEA was not. *Id.* In the present case, GISD does not grant access to *any* "employee organizations." Therefore, TSTA's claim that they are a "similar entity" to the civic groups allowed access by GISD fails under the *Perry* holding.[6] We hold that GISD policies are con-

**6.** TSTA attempts to distinguish *Perry.* TSTA argues that the groups allowed access in *Perry* were not similar entities to PLEA because the groups granted access were "organizations that engage in activities and educational relevance to students," while PLEA was a group that was concerned with *teacher* issues. *See Perry,* 460 U.S. at 47, 103 S.Ct. at 956, 74 L.Ed.2d at 806. Thus, TSTA contends that the school district in *Perry* had opened its doors to groups discussing student issues, but not groups discussing teacher issues. TSTA argues that the present case is distinguishable from *Perry* because GISD allows access to groups concerned with solely "teacher" issues—for example, YMCA teacher swimming and bowling teams.

The facts in *Perry* do not support TSTA's distinction. The school district in *Perry did* allow access to groups concerned with solely "teacher" issues. For example, PEA, the teacher union which had bargaining representative status, was allowed access. Also, there is no indication that the communications of the *Perry* YMCA were

stitutional as applied to the visitation of the school by outside TSTA representatives during school hours.

■ Appellants also contend that policies of GISD constitute impermissible content discrimination in violation of the equal protection clause of the Fourteenth Amendment. Since outside representatives of TSTA have no First Amendment right of access to the school, the grant of access to other organizations does not burden a fundamental right of TSTA. *Perry*, 460 U.S. at 52, 103 S.Ct. at 959, 74 L.Ed.2d at 809. Therefore, the school district's policy need only rationally further a legitimate state purpose. *Id.* We find one of the justifications advanced by GISD—that of limiting contacts during the school day so that teachers may concentrate on teaching—survives the test of rationality. Therefore, we find no merit in appellant's equal protection claim as it relates to outside representatives of TSTA.

### 2. *Use of school mail facilities*

■ Unless it has been opened to the general public, a school mail system is not a public forum. *Perry*, 460 U.S. at 47, 103 S.Ct. at 955–56, 74 L.Ed.2d at 806. The same is true of school billboards and the public address system so long as there are alternative channels of communications. *See Connecticut State Federation of Teachers v. Bd. of Educ. Members*, 538 F.2d 471, 480–81 (2nd Cir.1976).

Appellants argue that GISD allows other commercial and civic organizations to use school communication facilities. They then contend that either a public forum or a limited public forum has been created in GISD communication facilities, to which the appellants should be granted access. Appellants assert that "employee organizations" are the only groups denied access to GISD facilities.

■ The evidence indicates that GISD has not created a public forum in its communication facilities. On occasion, school principals have allowed certain civic and commercial groups to distribute literature through school facilities. For example, GISD sometimes allows access to organizations such as the PTA, Little League, Boy Scouts, Junior Achievement, teacher bowling and swimming groups, and Board-approved insurance companies. Similarly, in *Perry*, certain community and civic groups—*i.e.*, the Cub scouts, YMCA, local church groups, etc.—were granted access to school mailboxes. Nevertheless, *Perry* held that "[t]his type of selective access does not transform government property into a public forum." 460 U.S. at 47, 103 S.Ct. at 956, 74 L.Ed.2d at 806.

■ Likewise, TSTA has no right of access under a claim of "limited public forum." No "similar entities" to TSTA—*i.e.*, other employee organizations—are granted access to GISD facilities.[7] It is permissible to refuse to "grant employee organizations the right to use the school mails at all." *Ysleta Fed. of Teachers v. Ysleta Ind. Sch. Dist.*, 720 F.2d 1429, 1433 (5th Cir.1983). In short, GISD has not created a public forum and also has not created a "limited public forum" for entities similar to employee organizations. Therefore, we hold that GISD may prevent outside representatives of "employee organizations" from using school communication facilities.

■ It is important to note, however, that GISD's argument that Admin.Reg. 412 is necessary in order to comply with Texas Education Code § 21.904—which forbids school districts from "coerc[ing]" teachers to join any "group, club, committee, organization, or association"—is without merit. Appellees contend that allowing the mention of TSTA or other employee organizations on campus during school hours will somehow be seen as "coercion" by the school district to join those organizations.

---

substantially different from the communications of the GISD YMCA. Nevertheless, *Perry* held that PLEA was not a similar entity to the groups allowed access.

7. *See supra* note 6 and accompanying text (TSTA not "similar entity" to groups allowed access).

However, a policy which allows all employee organizations access under the same guidelines does not constitute "coercion." *See Widmar*, 454 U.S. at 273–76, 102 S.Ct. at 276–78, 70 L.Ed.2d at 449–51 (mere grant of access to religious organization does not "confer any imprimatur of state approval"); *Gay Alliance of Students v. Matthews*, 544 F.2d 162, 165 (4th Cir.1976) (No university approval of organization implied from university's recognition of organization).[8]

### B. *Communications of GISD Teachers.*

#### 1. *Private Communications*

Regulations on the speech of those who teach within the schools obviously must be drawn more narrowly than regulations on the speech of outside representatives. *See Country Hills Christian Church v. United School District 512*, 560 F.Supp. 1207, 1214–15 (D.Kan.1983) (cited with approval by this Court in *Ysleta*, 720 F.2d at 1435); *Hall*, 681 F.2d at 968 (distinction exists between teacher communications and the rights of "persons not assigned to the schools"). *Perry*, which concerns the rights of organizations outside the schools, does not apply to teacher communication within the school. *See Country Hills*, 560 F.Supp. at 1215, 1220; *see also Hastings v. Bonner*, 578 F.2d 136, 143 (5th Cir.1978) ("[T]here is no doubt that this circuit has adopted and now applies the *Tinker* test in cases involving the First Amendment rights of teachers."). The *Tinker* test comes from *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), which held that teacher communications may be suppressed only when "the expression or its method of exercise materially and substantially interferes with the activities or discipline of the school." *Id.; see also Shanley v. Northeast Ind. Sch. Dist.*, 462 F.2d 960, 969 (5th Cir.1972).

The evidence indicates that school officials interpret Admin.Reg. 412 as prohibiting *any* discussions among teachers relating to TSTA or TSTA business or relating to any teacher organization that occur on school premises during school hours; even though those discussions occur during lunch hour or other non-class time.[9] Al-

---

**8.** Curiously, GISD permits communications concerning other teacher groups, such as bowling teams, without any apparent concern that it is thereby coercing teachers to join such groups.

**9.** Assistant Superintendent Beavers testified as follows:
Q: Can you tell me whether the district has a policy or practice which prohibits teachers from discussing teacher employee organization matters between the hours of 8:00 and 3:45 on school days?
A: Yes, we do.
Q: Does it matter what the content of the conversation is or where on campus it occurs?
A: No it doesn't.
Q: Are two teachers—does it matter whether they are members or nonmembers of an organization?
A: No.
Q: If two teachers then are walking down the hall going to lunch and they start chatting about an upcoming TSTA seminar in Austin, is this a violation of that policy?
A: Technically it would be.

. . . . .

Q: If two teachers are sitting having lunch and they start talking about a TSTA membership drive and nobody else is within earshot and both of them are voluntarily partaking of the conversation, is that a violation of your district's policies?
A: Technically it would be a violation.
Principal Hardy testified as follows:
Q: If I were a member of TSTA and I were a member of your faculty, would there ever be a circumstance under which I could discuss TSTA business with other faculty members during school hours?
A: Not during the school hours.

. . . . .

Q: [I]n general if one wanted to [discuss TSTA business during school hours], he or she could not, could she?
A: She probably could illegally. She couldn't—
Q: If she did so, she would be violating the rules, wouldn't she?
A: Yes.
Q: What rules are we talking about? Are we still talking about Administration Regulation and Policy—
A: 412.
Principal White testified as follows:
Q: Do you have a policy as to whether two or more teachers can confer regarding teacher organization matters during school hours?

**1054**

though acknowledging that such an interpretation is unconstitutional, the district court disregarded this issue because it found that "there has never been any attempt to enforce such an interpretation." After reviewing the evidence in the light most favorable to appellants, we must disagree.

■ First, it is undisputed that school officials *would* prohibit GISD teachers from discussing TSTA if, in their view, such discussion amounted to "promoting" the organization. The district court found (and appellees argue on appeal) that punishment of speech "promoting" employee organizations is justified under an opinion of the Texas Attorney General. Texas Atty.Gen.Op. M.W. 89 held that it was a violation of the Texas Constitution to allow teachers to perform employee organization business on a "release time" basis.[10] The Attorney General found that such a program was unconstitutional because it "constitutes an unconditional grant of public funds to a private organization." Appellees urge that private teacher discussions during non-class time are comparable to the "release time" program.

The "release time" program is not at all comparable to private teacher conversations even though those conversations may be proselytizing. The "release time" pro-

gram provided that teachers who would otherwise be teaching would be allowed to be absent from their teaching duties for a specified number of days to work for an employee organization at the school district's expense. Here, in contrast, the issue is the right of teachers to discuss matters relating to employee organizations at times when the teachers would not otherwise be required to teach, but would be "free to talk about whatever they want," including "the Cowboy game ... [or] what they did over the weekend."[11] To allow teachers to speak favorably of an employee organization does not constitute an unlawful "grant of public funds to [the] organization," any more than to allow teachers to speak favorably of a political party, a church, a club, or a football team during the lunch hour constitutes an unlawful grant of public funds to such an organization.[12]

Second, there is firm evidence indicating that officials might be inclined to enforce their policies against *all* teacher speech mentioning TSTA that occurs on school premises during the school day whether the teacher is in the classroom or not.[13] Appellees' evidence in response demonstrates only that there is no active monitoring of teacher conversation.[14] This evidence does not establish that officials would refrain

A: Yes.
Q: What is the policy?
A: 412.
Q: They can't do it?
A: No.
Q: Does it matter whether they are members of an organization?
A: No.
Superintendent Douglas testified as follows:
Q: Can four non-elected members of TSTA who happen to be teachers and who happen to be taking a 10-minute coffee break in your teachers' lounge or work room—can they legitimately discuss next month's TSTA seminar in Austin?
A: We ask our staff members from refrain from discussing professional organizations and associations during the course of the school day.
Q: From 8:00 to 3:45?
A: 8:00 to 3:45.
Q: So it would be technical violation?
A: Yes.

10. The "release time" program provided that "nine days of release time with full pay will be allotted to professional organizations for each 100 members who are in good standing."

11. Testimony of Assistant Superintendent Beavers and Principal White.

12. The "release time" program is not at issue in this case and we express no opinion regarding the Texas Attorney General's Opinion.

13. *See* testimony, *supra* note 9.

14. The district court referred to the following testimony in concluding that "there has never been any attempt to enforce such an interpretation" of Admin.Reg. 412(5):
Q: Now on just general freedom on speech on talking about whatever they want to talk about, there is no attempt to monitor or keep the teachers from talking about whatever they want to talk about, is there?

from enforcing violations of which they became aware. For example, there is no indication that officials would not take at least some sort of disciplinary action against a teacher whose violation of Admin.Reg. 412 was reported to officials by another teacher.

Finally, the mere fact that this policy exists is sufficient to support appellants' cause of action. Even if no officials attempt to overhear teacher conversations, conscientious teachers should be expected to obey school regulations.[15] The regulation inhibits the speech of law abiding teachers. Thus, even without actual monitoring of conversations, the rule chills teacher speech in violation of their First Amendment rights. *See Dombrowski v. Pfister,* 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); *Spartacus, etc. v. Board of Trustees of Illinois,* 502 F.Supp. 789, 796–97 (N.D.Ill.1980) ("Injury to First Amendment rights may result from the threat of enforcement itself, since it may chill ... ardor and desire to engage in protected expression.").

We hold that GISD policies which purport to deny teachers the right to discuss TSTA or TSTA business during non-class time are unconstitutional. Appellees have not demonstrated that such conversations result in a "material and substantial interference with the activities or discipline of the school."

### 2. *Use of school media facilities*

The primary purpose of GISD's internal mail system is to distribute official messages between school administrators and teachers and among the teachers themselves. GISD allows teachers to communicate with each other on any subject, including purely personal matters, except for subjects relating to employee organizations.[16]

■ Appellees argue that prohibiting teacher communications as they relate to "employee organizations" is proper because it preserves the neutrality mandated by the Texas Education Code. As noted above, we find no merit to that contention.[17] Teachers who have access to school media facilities for even purely personal matters cannot be prohibited from the exercise of that right simply because their internal speech may concern "employee organizations." We therefore hold that GISD policies preventing teachers from using school mail facilities to mention "employee organizations" are unconstitutional. So also are prohibitions against the use of whatever billboard facilities may be set aside for teachers' personal messages. No "material and substantial" disruption has been shown.

### CONCLUSION

We affirm that part of the summary judgment which upholds Administrative Regulation 412's prohibition against visitation and use of school media by outside employee organization representatives during school hours. We reverse that part of

---

A:  (Principal White) None whatsoever.

.      .      .      .      .

Q:  But you don't have any way of monitoring it to eavesdrop on people to be sure that they didn't talk about the party they went to last night?

A:  (Assistant Superintendent Beavers) No, sir, we don't do that.

Q:  But being responsible people you would expect them [the teachers] to keep their conversation generally along the lines of the school business?

A:  Yes sir.

**15.** Although acknowledging that officials do not eavesdrop on conversations, Assistant Superintendent Beavers testified as follows:

Q:  Teachers are professional people?

A:  Yes.

Q:  And you expect them generally to follow the regulations?

A:  Yes, we do.

**16.** Neither appellees nor appellants distinguish access to use the public address system from the access granted to use the mail system or the school billboards. Obviously, schools do not generally allow teachers to broadcast personal messages over their loudspeakers. The use of the public address system has not been placed at issue in this case.

**17.** *See* text accompanying note 8, *supra.*

the summary judgment which upholds Administrative Regulation 412's application to private teacher conversations and use of school media facilities by teachers employed in GISD schools as those media facilities are otherwise available to teachers for their personal messages. We grant appellants' motion for partial summary judgment holding the application of the Regulation to these activities unconstitutional.

AFFIRMED in part; REVERSED in part; and REMANDED for proceedings not inconsistent with this opinion.