TEXAS STATE TEACHERS
ASSOCIATION, et al.,
Plaintiffs–Appellants,

v.

GARLAND INDEPENDENT SCHOOL
DISTRICT, et al.,
Defendants–Appellees.

No. 87–1221.

United States Court of Appeals,
Fifth Circuit.

Feb. 8, 1988.

Jeremiah Collins, John Rothchild, Robert H. Chanin, Washington, D.C., for plaintiffs-appellants.

Earl Luna, Mary Milford, Law Offices of Earl Luna, Dallas, Tex., for defendants-appellees.

Before GOLDBERG, WILLIAMS and HIGGINBOTHAM, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

This proceeding challenges the district court's denial of a motion for an attorney's fees award in a case in which the appellants had partial success on a 42 U.S.C. § 1983 claim. We agree with the district court that the appellants were not "prevailing parties" and therefore are not eligible for an award of attorney's fees under 42 U.S.C. § 1988, and we affirm.

I.  *Factual Background And Prior Proceedings*

The Texas State Teachers Association (TSTA), the Garland Education Association (GEA), and several individuals belonging to or employed by these organizations filed a 42 U.S.C. § 1983 suit in federal court on March 13, 1981, challenging a regulation of the Garland Independent School District (GISD). This regulation, GISD Administrative Regulation 412, was construed by GISD administrators and by this Court to prohibit visits to GISD campuses by outside representatives of teacher employee organizations[1] during regular school hours (8:00 a.m.—3:45 p.m., including lunch and nonteaching time), such representatives' use of a GISD school's internal communication systems, private conversations be-

_____

1. "Employee Organization" is defined as any organization whose main purpose is to represent a group of employees in matters of employ-
ment practices and procedures. TSTA and GEA are such organizations.

tween two teachers regarding teacher employee organizations, and teacher use of a school's internal mail system and bulletin boards for this subject. *Texas State Teachers Assoc. v. Garland Independent School District*, 777 F.2d 1046 (5th Cir. 1985).

The challenge to Regulation 412 apparently arose when nine TSTA representatives visited several GISD schools during school hours in January 1981, and were refused permission by school administrators to distribute their literature or to meet with teachers or TSTA faculty representatives. In their suit, appellants claimed the regulation violated their free speech and free association rights under the First Amendment and violated the Equal Protection and Due Process clauses of the Fourteenth Amendment. They also claimed the regulation was unconstitutionally overbroad. Appellants sought nominal, actual, and exemplary damages, injunctive relief, and declaratory relief under 42 U.S.C. § 1983.

Both sides filed cross motions for summary judgment. The district court granted GISD's motion for summary judgment and denied appellants' summary judgment motion with two exceptions not at issue before us.[2] The district court's opinion focused on the application of Regulation 412 in preventing outside representatives of employee organizations from recruiting, organizing, or meeting with GISD teachers on GISD campuses during school hours and in denying them access to GISD schools' internal mail systems, teacher mailboxes, bulletin boards, and public address systems. The district court held that this application of Regulation 412 did not violate appellants' constitutional rights to free speech, free association, or equal protection. The district court found no merit in appellants' due process challenge.

The court's discussion of Regulation 412's application to conversations among GISD teachers regarding employee organizations consisted of a single footnote. In that footnote the district court held that prohibiting teachers from discussing employee organization business among themselves during non-class time would be unconstitutional, but the court noted that there had not been any attempt to enforce such an interpretation of the regulation. The court held, however, that Regulation 412 could be used to prohibit teachers from promoting an employee organization or working for such an organization during the school day but during off-duty hours of teachers.

On appeal, this Court agreed with the district court that Regulation 412 was constitutional as it applied to outside representatives of employee organizations by preventing their access to GISD campuses and employees during school hours and preventing their use of school communication facilities. 777 F.2d at 1050–53. We held, however, that Regulation 412 was unconstitutional as it applied to prohibit *"any* discussions among teachers relating to TSTA or TSTA business or relating to any teacher organization that occur on school premises during school hours, even though those discussions occur during lunch hour or other non-class time." 777 F.2d at 1053. (emphasis in original). We disagreed with the district court's holding that this issue was not properly before the court. We held that conversations about employee organizations between GISD teachers during nonclass times during the school day could not be prohibited since there was no showing "that such conversations result in a 'material and substantial interference with the activities or discipline of the school.'" 777 F.2d at 1055.

We also struck down the regulation's ban on the use of school internal mail facilities and bulletin boards by GISD teachers to transmit messages relating to employee organizations.

2. These two exceptions involved provisions in Regulation 412 which required the approval of a school principal before an employee organization could use school premises for meetings during *non-school* hours. The district court held that these provisions were unconstitutionally overbroad. The court noted that these two provisions were of minor significance and did not affect the constitutionality of the remainder of the regulation. This holding was not appealed.

GISD filed a petition for rehearing before this Court, and a suggestion for rehearing en banc, contesting this Court's invalidation of Regulation 412 as it applied to teacher-teacher communication. These petitions were denied by the court. GISD filed a Motion for Stay of Enforcement and/or Recall of Mandate which we also denied. GISD appealed our decision to the Supreme Court and filed an Application For Stay of Enforcement pending appeal with the Supreme Court which that Court denied. The Supreme Court summarily affirmed our judgment, —— U.S. ——, 107 S.Ct. 41, 93 L.Ed.2d 4 (1986).

Appellants subsequently moved the district court for an award of attorney's fees pursuant to 42 U.S.C. § 1988. The district court denied the request for attorney's fees, holding that although the appellants had achieved "partial success" in their suit against GISD, they did not prevail on the "central issue" which was GISD's policy limiting communications and access between employee organizations and GISD teachers. TSTA and the various appellants appeal this holding.

## II. *Attorney's Fees Under 42 U.S.C. § 1988*

In pertinent part, 42 U.S.C. § 1988 reads: "In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, ... the court, in its discretion, may allow the *prevailing party,* other than the United States, a reasonable attorney's fee as part of the costs." (emphasis added). The term "prevailing party" is not defined by the statute, but has been judicially defined by the courts. We have held that the test for "prevailing party" status as it applies to plaintiffs is "whether the plaintiff prevailed on the central issue by acquiring the primary relief sought." *Simien v. City of San Antonio,* 809 F.2d 255, 258 (5th Cir.1987). *See also*

*Commonwealth Oil Refining Co., Inc. v. Equal Employment Opportunity Commission,* 720 F.2d 1383, 1385 (5th Cir.1983); *Taylor v. Sterrett,* 640 F.2d 663, 669 (5th Cir.1981); *Iranian Students Association v. Edwards,* 604 F.2d 352, 353 (5th Cir. 1979).

Our definition of "prevailing party" is narrower than that of some of the other Federal appellate courts. "Prevailing parties" for § 1988 attorney's fees purposes has also been defined as parties who " 'succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), *quoting Nadeau v. Helgemoe,* 581 F.2d 275, 278–9 (1st Cir.1978). In *Hensley,* the Supreme Court merely accepted the "generous formulation" of the "prevailing party" definition found in some of the circuits but did not hold it to be the only correct definition. *See* 461 U.S. at 433 n. 8, 103 S.Ct. at 1939 n. 8.

■ Clearly the "prevailing party" issue is a threshold inquiry to be made by a district court prior to the exercise of its discretion in deciding whether to award attorney's fees under § 1988. If plaintiffs are not the "prevailing parties" under § 1988, then they are not even eligible for an attorney's fees award.[3]

■ Applying this Court's definition of "prevailing party" to the facts of this case, we agree with the conclusion of the district court that appellants did not succeed on the central issue of their suit and did not obtain the primary relief sought. The main thrust of this lawsuit was appellants' attempt to open up GISD school campuses during school hours to outside representatives of employee organizations like TSTA and GEA and to allow such organizations the

---

3. It should be noted that once a plaintiff is determined to be the "prevailing party" in an action subject to 42 U.S.C. § 1988, the plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart,* 461 U.S. at 429, 103 S.Ct. at 1937; *Taylor v. Sterrett,* 640 F.2d at 668; *Iranian Students Association v.* *Edwards,* 604 F.2d at 353. In other words, the discretion of a district court in denying an award of attorney's fees to a prevailing plaintiff in a civil rights case is limited absent special circumstances. In the case at bar, however, the district court did not even exercise its discretion because the plaintiffs did not meet the threshold requirement of "prevailing party" status.

use of school communication facilities. Appellants failed in this attempt, and this was the primary relief sought in this lawsuit. Granted, appellants did succeed on significant secondary issues by having Regulation 412 declared unconstitutional as it applied to teacher to teacher conversation and teacher use of school communication systems. But this was not the primary relief sought. The central issue in this case was employee organization access to GISD campuses, not internal teacher communication within those campuses.

### III. *Conclusion*

The district court was correct in holding that appellants were not eligible for an attorney's fees award under 42 U.S.C. § 1988 because they were not "prevailing parties" under § 1988.

AFFIRMED.

GOLDBERG, Circuit Judge, dissenting:

The Texas State Teachers Association ("TSTA") has won a hard fought battle for the first amendment rights of teachers in the Garland Independent School District ("GISD"). TSTA sought invalidation of GISD administrative regulation 412, which broadly prohibited union access to school premises, and barred teachers from "talking union" on school grounds. TSTA lost in the district court, but persuaded a panel of this Circuit to invalidate the regulation. TSTA successfully defended this judgment before the Supreme Court.

Today, the majority correctly applies the law of this Circuit to the facts of this case and concludes that, notwithstanding its apparent victory, TSTA is not the prevailing party for the purpose of a fee award under The Civil Rights Attorney's Fees Act of 1976, 42 U.S.C. § 1988 ("§ 1988"). By adhering to the law of this Circuit, the majority persists in an approach to the prevailing party standard that has been rejected by all but one of the other circuits,

flies in the face of Supreme Court precedent and is inconsistent with the legislative purpose in enacting § 1988. Taking my law from Congress, as interpreted by the Supreme Court, I respectfully dissent.

### I. *The Central Issue Test is Inconsistent With Supreme Court Precedent*

Under the Civil Rights Attorney's Fees Act, a district court may, in its discretion, award attorney's fees to the prevailing parties in lawsuits brought to enforce civil rights.[1] In *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court discussed the standard for determining the amount and propriety of a fee award to a "partially prevailing plaintiff." *Id.* at 426, 103 S.Ct. at 1937. The Supreme Court quoted with approval the First Circuit's rule that "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on *any significant issue* in the litigation which achieves *some of the benefit* the parties sought in bringing the suit." *Id.* at 433, 103 S.Ct. at 1939 (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978)). While the Court does not mandate a specific "prevailing party" standard, it does mandate a method. *Hensley* expressly declares that a plaintiff can be deemed the prevailing party even where only "minor" relief was obtained, *Id.* at 439, 103 S.Ct. at 1942 (citing *Brown v. Bathke*, 588 F.2d 634 (8th Cir.1978)), and requires the district court to look to the results obtained in determining the amount of an award. Under *Hensley* the degree of success goes to the amount of an award, not to the propriety of that award.

This Circuit has rejected the "generous formulation" of *Nadeau v. Helgemoe*, approved by the Supreme Court in *Hensley*, in favor of a crabbed standard which deems a party "prevailing" only if he or she "has been successful on *the central issue* ... as exhibited by the fact that he

---

1. 42 U.S.C. § 1988 provides: "[I]n any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985 and 1986 of [title 42 of the United States Code], ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

has acquired *the primary relief sought."* *Commonwealth Oil Refining Co. v. Equal Employment Opportunity Commission,* 720 F.2d 1383, 1385 (5th Cir.1983) (emphasis original) (quoting *Iranian Students Association v. Edwards,* 604 F.2d 352, 353 (5th Cir.1979)); *see also Simien v. City of San Antonio,* 809 F.2d 255, 258 (5th Cir. 1987).[2] This Circuit's approach requires the district court to look back at the complaint, the proceedings and the trial, to divine plaintiff's primary goal. Judge Buchmeyer used these tools as well as they could be used. He looked to the number of lines in the complaint and the amount of time spent at trial proving the various issues. Applying the clearly erroneous standard to his factual findings, I cannot say that he reached the wrong conclusion.

I object, though, to the fact that these tools must be used at all. These factors provide some indication of the centrality of a given issue, but the fit is imperfect. Judges are not mind readers. Meritorious lawsuits are often brought for idiosyncratic reasons. Under our liberal system of notice pleading, a complaint may be filed before the legal strategy of the lawsuit is fully formed. Some allegations may be clear winners, some worthwhile longshots. At the outset any prediction as to their relative importance in the upcoming lawsuit may be well nigh impossible. At trial, different claims may have more complicated and hence more time consuming proofs. A central issue may receive little attention in the complaint or at trial, simply because its importance is not matched by its complexity.

The Supreme Court has eschewed such an inquiry, stating that the method for dealing with partial success is to reduce the amount of the award, not to engage in extended inquiry into the plaintiff's subjective goal in bringing the lawsuit, stating:

> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendants—often an institution and its officers, as in this case—counsel's work on one claim will be unrelated to his work on another claim.... The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits.

*Hensley* 461 U.S. at 434–35, 103 S.Ct. 1940.

In *Hensley,* the Supreme Court noted and did not disapprove the central issue test, *id.* at 433 n. 8, 103 S.Ct. 1939 n. 8. At that point no decision applying the central issue test had rendered it facially inconsistent with the principles articulated in *Hensley.* Indeed, with one exception, cases decided at the circuit level since *Hensley* would most likely have been decided the same way under the "generous formulation." *See Commonwealth Oil Refining Co. Inc. v. E.E.O.C.,* 720 F.2d 1383, 1386 (5th Cir.1983) (Tate, J. dissenting); *Simien v. City of San Antonio,* 809 F.2d 255 (5th Cir.1987). *But see Uviedo v. Steves Sash & Door Co.,* 760 F.2d 87, 88 (5th Cir.1985) (Rubin, J., dissenting from denial of a Suggestion for Rehearing En Banc).

This case, however, clearly demonstrates the point at which the central issue test and the "generous formulation" diverge. Plaintiffs have received significant relief, but they failed to win the primary relief sought. *Hensley* made it clear that the method for dealing with such partial success was to withhold payment for unsuccessful claims, not to withhold fees alto-

---

**2.** This "central issue" test had its genesis in the case of *Iranian Students Association v. Edwards,* 604 F.2d 352 (5th Cir.1979). The case was decided prior to *Hensley,* awarded attorney's fees, and dealt with the issue of relief where the case ended before trial on the merits. As Judge Tate pointed out, dissenting in *Commonwealth Oil,* "the issue in this decision ... was only whether a plaintiff, which had obtained relief after a temporary restraining order, could be regarded as a prevailing party in the absence of a show-

ing of 'probable success on the merits' (had the case been fully tried.... The court's actual holding was that "a plaintiff can be a 'prevailing party' even though the relief he has obtained is only preliminary or ... is the result of a consent decree." 720 F.2d at 1388.

The language used in this case has since been extended to a point where it now conflicts with Congressional purpose and Supreme Court precedent.

195

gether. Here plaintiffs vindicated important first amendment rights. Section 1988 mandates compensation for getting what they got, regardless of whether they got what they wanted.

## II. There is a Split in Circuits Which Must be Resolved by the Supreme Court.

In any other Circuit, save the Eleventh, see, e.g., Miami Herald Publishing Co. v. City of Hallendale, 742 F.2d 590, 591 (11th Cir.1984), plaintiffs would receive an award of attorneys' fees as a matter of course. Eleven Circuits have followed the First Circuit's "generous formulation": Miller v. Staats, 706 F.2d 336, 340–41 (D.C.Cir.1983); Gingras v. Lloyd, 740 F.2d 210, 212 (2nd Cir.1984); Abraham v. Pakarski, 728 F.2d 167, 175 (3d Cir.), cert. denied, 467 U.S. 1242, 104 S.Ct. 3513, 82 L.Ed.2d 822 (1984); Lotz Realty Co., Inc. v. U.S. Dept. of Housing, 717 F.2d 929, 931 (4th Cir.1983); Kentucky Association for Retarded Citizens Inc. v. Conn, 718 F.2d 182 (6th Cir. 1983); Mary Beth G. v. City of Chicago, 723 F.2d 1263, 1276–77 (7th Cir.1983); Fast v. School Dist. of City of Ladue, 728 F.2d 1030, 1032 (8th Cir.1984) (en banc); Lummi Indian Tribe v. Oltman, 720 F.2d 1124, 1125 (9th Cir.1983); In re Kansas Congressional Dists. Reapportionment Cases, 745 F.2d 610, 612 (10th Cir.1984). This Circuit and the Eleventh (following old Fifth Circuit precedent) have persisted in their use of the central issue approach.

Indeed, there is even a split within this Circuit. Posada v. Lamb County, Tex., 716 F.2d 1066, 1071 n. 6 (5th Cir.1983) (endorsing the "generous formulation" of Nadeau v. Helgemoe). This Circuit, when faced with this inconsistency in its own law, the non-conformity of that law with Supreme Court precedent and the rejection of the central issue approach by every circuit faced with the question since Hensley, has steadfastly refused to review the question en banc. Uviedo v. Steves Sash & Door Co., 760 F.2d 87, 88 (5th Cir.1985) (Rubin, J. dissenting from denial of a Suggestion for Rehearing En Banc). If this federal statute is to be uniformly applied, the Supreme Court must grant certiorari in order to resolve this split in circuits.

## III. The Central Issue Approach is Inconsistent with The Legislative History of Section 1988

### A. The Purpose of § 1988

In enacting § 1988 Congress sought to increase the number of suits brought to vindicate public rights, by eliminating the financial uncertainty associated with such suits, saying:

> In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must recover what it costs them to vindicate these rights in court.

S.Rep. No. 1011, 94th Cong., 2d Sess. 2, reprinted in 1976 U.S.Code Cong. Adm. News 5908, 5910. Against this clear mandate, the central issue test sets a high threshold for recovery, thereby leaving any attorney who vindicates important public rights but achieves only partial success uncertain as to whether he or she will recover fees.

The legislative history does not speak directly to the degree of certainly required, but there is strong evidence that Congress intended fees to be awardable even when plaintiff did not succeed on the central issue of the litigation. The Senate Report on § 1988 expressly approved awards of attorneys' fees pendente lite, and in the process suggested a lower "prevailing party" threshold than required in this Circuit:

> In appropriate circumstances, counsel fees under [§ 1988] may be awarded pendente lite. See Bradley v. School Board of City of Richmond, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). Such awards are especially appropriate where a party has prevailed on an important matter in the course of litiga-

tion, *even when he ultimately does not prevail on all issues.*

S.Rep. No. 1011, 94th Cong., 2d Sess. 5, *reprinted in* 1976 U.S.Code Cong. Adm. News 5908, 5912 (emphasis added). *Hanrahan v. Hampton,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980). Thus the suggested standard for interim attorney's fees is simply success on an "important matter." Paradoxically, the law of this Circuit requires a litigant who succeeds at trial to achieve a greater degree of success than the interim fee applicant envisioned by Congress. After trial, in this Circuit, a litigant must succeed on the central issue.

This inconsistency becomes more important when one recognizes that many suits brought under § 1983, for example, are not simple bipartite suits which end with a jury verdict or order. Many cases are ongoing institutional cases, brought to desegregate schools, *see, e.g., United States v. Board of Education of City of Chicago,* 744 F.2d 1300 (7th Cir.1984), to reform prisons, *see, e.g., Ruiz v. Estelle,* 679 F.2d 1115 (5th Cir.1982), or mental institutions, *see, e.g., Lelsz v. Kavanagh,* 629 F.Supp. 1487 (N.D. Tex.1986). These cases often consist of trials, consent decrees, injunctions, damage judgments and hearings, all carried out over the course of many years. These crucial cases consist of many small victories and many small defeats. No individual attorney could bear the cost of prosecuting such a suit without the availability of interim fees after a victory in one of the case's many skirmishes.

This Circuit's central issue approach is inconsistent with the availability of such interim fees. In a school desegregation case, even the attorneys may disagree over what the primary goal of the litigation is, let alone whether it has been achieved. Indeed, the original attorneys may long ago have left the case. Yet few would argue that attorneys' fees should be denied to public spirited attorneys who have aided in dismantling segregated schools. The same is true of prison and institutional reform litigation, where supervision of implementation of a consent decree may take years, and high hopes often give way to modified expectations. Schools have been partially desegre-

gated, prisons partially reformed. A plaintiff need not single handedly part the Red Sea to be considered a prevailing party for the purposes of § 1988. Congress was no doubt cognizant of the proverb, "better is half a loaf than no bread." John Heywood, *Proverbs* 1546.

The qualified interim successes in cases of such great importance were within the contemplation of Congress when they approved interim fees. Strict adherence to the central issue test undercuts this clearly stated congressional goal.

## IV. Conclusion

The approach chosen by the Supreme Court is salutary for reasons of both judicial economy and coherence. The Court has admonished, "A request for attorney's fees should not result in a second major litigation." *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941. The approach followed in this Circuit enhances the likelihood of protracted litigation over attorneys' fees. *Uviedo,* 766 F.2d at 88. The central issue approach requires a judicial assessment of plaintiff's goals. Such an inquiry is problematic. During the course of the litigation goals inevitably shift. As here, an issue of only minor importance in the original complaint rose to sufficient significance to inspire an appeal all the way to the Supreme Court. The approach followed in this Circuit forces the trial court to evaluate the post hoc recharacterization of the lawsuit to determine the central issue ex ante. This inquiry is inherently artificial, complex and time consuming.

In addition to encouraging secondary litigation over fees, the "central issue" approach is inconsistent with the efficiency goals which motivate liberal rules of joinder. Allowing fees only if there is success on the central issue might encourage segmentation of claims into separate lawsuits in order to increase the likelihood of fees on the meritorious claims.

Finally, the central issue standard places the focus of attention on the wrong issue. The goal of § 1988 was to make selflessness less expensive. The central issue test

improperly focuses the court's attention on the selfish goals of the plaintiff. The central issue test requires an inquiry that is both difficult and irrelevant to the social function served by § 1988. The question that should be asked is whether a public right has been vindicated. If so Congress requires an award of attorney's fees. The "generous formulation" of *Nadeau v. Helgemoe* properly focuses the attention of the factfinder on whether plaintiff has benefitted the public by serving as a private attorney general.

Thus, the central issue standard is inconsistent with Supreme Court precedent, with the legislative history, and with sound judicial policy. It has been rejected by all but one other Circuit. I profoundly hope that the Supreme Court will grant certiorari in this case, and resolve this split in circuits in favor of the generous formulation endorsed in *Hensley*. For these reasons I respectfully dissent.